IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILSHIRE BANK,<br><br>     Plaintiff,<br><br>     v.<br><br>MIYE CHON, a/k/a Karen Chon,<br>SUK JOON RYU, a/k/a James S.<br>Ryu, TAE JONG KIM,<br>BERGENFIELD BAGEL & CAFÉ<br>INC., d/b/a Café Clair, MAYWOOD<br>BAGEL INC., UB'S PIZZA &<br>BAGEL INC., UB'S BAGEL &<br>CAFÉ INC., and UBK BAGELS<br>CORP., d/b/a Franklin Bagels &<br>Café,<br><br>     Defendants.<br><br>******************************** | : : : : : : : : : : : : : : : : : : : : : : : : : | CASE NO. 2:14-cv-01770-JLL-JAD |
| SUK JOON RYU, a/k/a James S.<br>Ryu,<br><br>     Counterclaim Plaintiff,<br><br>     v.<br><br>WILSHIRE BANK,<br><br>     Counterclaim Defendant.<br><br>******************************** | : : : : : : : : : : : : : : | JURY TRIAL DEMANDED |
| SUK JOON RYU, a/k/a James S.<br>Ryu,<br><br>     Third-Party-Counterclaim<br>     Plaintiff, | : : : : : : | |

| | | |
|---|---|---|
| **v.** | : | |
| | : | |
| **KWON HO JUNG, JAE WHAN YOO, STEVEN S. KOH, and LISA PAI,** | : | |
| | : | |
| | : | |
| | : | |
| **Third-Party-Counterclaim Defendants.** | : | |
| | : | |
| | : | |
| ************************************ | : | |
| | : | |
| **SUK JOON RYU, a/k/a James S. Ryu,** | : | |
| | : | |
| **Cross-claim Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| **MIYE CHON, a/k/a Karen Chon, TAE JONG KIM, BERGENFIELD BAGEL & CAFÉ INC., d/b/a Café Clair, MAYWOOD BAGEL INC., UB'S PIZZA & BAGEL INC., UB'S BAGEL & CAFÉ INC., and UBK BAGELS CORP., d/b/a Franklin Bagels & Café,** | : | |
| | : | |
| **Cross-claim Defendants.** | : | |

## SUK JOON RYU'S ANSWER AND
## AFFIRMATIVE DEFENSES TO WILSHIRE BANK'S
## AMENDED COMPLAINT, COUNTERCLAIMS AND CROSS-CLAIMS

Defendant-Counterclaim Plaintiff-Third-Party-Counterclaim Plaintiff-Cross-claim Plaintiff Suk Joon Ryu, a/k/a James S. Ryu ("Ryu"), by and through his attorneys, hereby responds to Wilshire Bank's Amended Complaint as follows:

## NATURE OF THE ACTION

1.     Admitted in part, denied in part. Ryu admits that Wilshire Bank is the successor-by-merger of BankAsiana. The remaining allegations in this paragraph

contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies that he embezzled any money BankAsiana, and specifically denies that he conspired together and engaged in a scheme with Chon to embezzle from BankAsiana.

## THE PARTIES

2.     Admitted based on information and belief.

3.     Admitted based on information and belief.

4.     Admitted.

5.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

6.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

7.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

8.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

9.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

10.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

## JURISDICTION AND VENUE

11.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

12.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

13.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

## BACKGROUND

### Wilshire Bank's Acquisition of BankAsiana

14.     Admitted.

15.     Admitted.

16.     Admitted.

### Post-Merger Discovery of Chon and Ryu's Embezzlement Perpetrated During Their Employment with BankAsiana

17.     Denied for lack of information.

18.     Admitted in part, denied in part. Ryu admits that Chon embezzled from BankAsiana for over three years by using her credentials to access BankAsiana's computer system to make a number of unauthorized withdrawals from BankAsiana's customers' certificate of deposit accounts and then removed such

4

funds in cash from the vault. The remaining allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies that he conspired together and engaged in a scheme with Chon to embezzle from BankAsiana, specifically denies aiding and abetting Chon in the embezzlement, and specifically denies any knowledge of Chon's embezzlement until he learned about it from Chon in January 2014.

19.     Admitted in part, denied in part. Ryu admits that Chon embezzled $1,575,886.40 from BankAsiana. Ryu denies embezzling any money from BankAsiana.

20.     Denied for lack of knowledge.

21.     Denied.

22.     Admitted in part, denied in part. Ryu admits that Chon kept portions of the proceeds that she embezzled for her own use and benefit, and that Chon diverted portions of the proceeds that she embezzled to her husband, defendant Tae Jong Kim, for their own use and benefit. Ryu denies any involvement in Chon's criminal embezzlement scheme.

23.     Admitted in part, denied in part. Ryu admits that Chon diverted portions of the proceeds that she embezzled to her husband's corporations – defendants Bergenfield Bagel & Café, Inc., Maywood Bagel Inc., UB's Pizza & Bagel Inc., UB's Bagel & Café Inc., and UBK Bagels Corp. – for their own use and benefit. Ryu denies any involvement in Chon's criminal embezzlement scheme.

**Defendant Ryu's Conversion of Wilshire Bank's Property**

24.     Admitted.

25.     Admitted in part, denied in part. Ryu admits that he took the Dell XPS and Sony Vaio from his BankAsiana office on or about September 28, 2013. Ryu denies that he removed the computers without any permission or authority of BankAsiana or Wilshire Bank.

26.     The allegations in the first sentence of this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. The allegations in the second sentence of this paragraph are admitted.

27.     Admitted in part, denied in part. Ryu admits that counsel for Wilshire Bank sent him a letter dated February 7, 2014, and that he gave the Dell XPS and Sony Vaio to Wilshire Bank on or about February 12, 2014. The letter is a document that speaks for itself and any characterization of it is denied. Ryu denies the remaining allegations in this paragraph.

### FIRST CLAIM FOR RELIEF
### AGAINST DEFENDANT CHON
#### (Conversion)

28.     Ryu hereby incorporates his responses to Paragraphs 1 through 27 as if fully set forth herein.

29.     Admitted in part, denied in part. Ryu admits that Chon made unauthorized withdrawals from BankAsiana's customer's CD account and converted such sums to her own use and benefit. Ryu denies that he aided and abetted Chon.

30.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

## SECOND CLAIM FOR RELIEF
## AGAINST DEFENDANT CHON
### (Conversion)

31.     Ryu hereby incorporates his responses to Paragraphs 1 through 30 as if fully set forth herein.

32.     Admitted in part, denied in part. Ryu admits that Chon made unauthorized withdrawals from BankAsiana's customer's CD account and converted such sums to her own use and benefit. Ryu denies that he aided and abetted Chon.

33.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

## THIRD CLAIM FOR RELIEF
## AGAINST DEFENDANT CHON
### (Conversion)

34.     Ryu hereby incorporates his responses to Paragraphs 1 through 33 as if fully set forth herein.

35.     Admitted in part, denied in part. Ryu admits that Chon made unauthorized withdrawals from BankAsiana's customer's CD account and converted such sums to her own use and benefit. Ryu denies that he aided and abetted Chon.

36.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

### FOURTH CLAIM FOR RELIEF
### AGAINST DEFENDANT CHON
### (Conversion)

37.     Ryu hereby incorporates his responses to Paragraphs 1 through 36 as if fully set forth herein.

38.     Admitted in part, denied in part. Ryu admits that Chon made unauthorized withdrawals from BankAsiana's customer's CD account and converted such sums to her own use and benefit. Ryu denies that he aided and abetted Chon.

39.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

### FIFTH CLAIM FOR RELIEF
### AGAINST DEFENDANT CHON
### (Conversion)

40.     Ryu hereby incorporates his responses to Paragraphs 1 through 39 as if fully set forth herein.

41.     Admitted in part, denied in part. Ryu admits that Chon made unauthorized withdrawals from BankAsiana's customer's CD account and converted such sums to her own use and benefit. Ryu denies that he aided and abetted Chon.

42.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

## SIXTH CLAIM FOR RELIEF
## AGAINST DEFENDANT CHON
### (Conversion)

43.     Ryu hereby incorporates his responses to Paragraphs 1 through 42 as if fully set forth herein.

44.     Admitted in part, denied in part. Ryu admits that Chon made unauthorized withdrawals from BankAsiana's customer's CD account and converted such sums to her own use and benefit. Ryu denies that he aided and abetted Chon.

45.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

## SEVENTH CLAIM FOR RELIEF
## AGAINST DEFENDANT CHON
### (Conversion)

46.     Ryu hereby incorporates his responses to Paragraphs 1 through 45 as if fully set forth herein.

47.     Admitted in part, denied in part. Ryu admits that Chon made unauthorized withdrawals from BankAsiana's customer's CD account and converted such sums to her own use and benefit. Ryu denies that he aided and abetted Chon.

48.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

**EIGHTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT CHON**
**(Fraud)**

49.     Ryu hereby incorporates his responses to Paragraphs 1 through 48 as if fully set forth herein.

50.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information. In further answer, Ryu denies that he conspired together with Chon to embezzle from BankAsiana.

51.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

52.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

53.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

54.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

**NINTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT CHON**
**(Civil Conspiracy to Defraud)**

55.    Ryu hereby incorporates his responses to Paragraphs 1 through 54 as if fully set forth herein.

56.    Allegations in this paragraph address other Defendants in this case and are denied for lack of information. In further answer, the allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies that he conspired together and maliciously and willfully entered into a scheme with Chon to embezzle from BankAsiana.

57.    Allegations in this paragraph address other Defendants in this case and are denied for lack of information. In further answer, the allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies that he conspired together with Chon to embezzle from BankAsiana.

58.    The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

**TENTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT CHON**
**(Breach of Fiduciary Duty)**

59.     Ryu hereby incorporates his responses to Paragraphs 1 through 58 as if fully set forth herein.

60.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information. In further answer, the allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied.

61.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information. In further answer, the allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies that he conspired together and maliciously and willfully entered into a scheme with Chon to embezzle from BankAsiana.

62.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

**ELEVENTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT CHON**
**(Breach of Fiduciary Duty)**

63.     Ryu hereby incorporates his responses to Paragraphs 1 through 62 as if fully set forth herein.

64.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information. In further answer, the allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied.

65.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information. In further answer, the allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied.

66.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

**TWELFTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT CHON**
**(Unjust Enrichment)**

67.     Ryu hereby incorporates his responses to Paragraphs 1 through 66 as if fully set forth herein.

68.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information. In further answer, the allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied.

## THIRTEENTH CLAIM FOR RELIEF
## AGAINST DEFENDANT RYU
### (Conversion)

69.     Ryu hereby incorporates his responses to Paragraphs 1 through 68 as if fully set forth herein.

70.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies causing Chon to make unauthorized withdrawals from BankAsiana's customer's CD accounts and converting such funds to his own use and benefit.

71.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

## FOURTEENTH CLAIM FOR RELIEF
## AGAINST DEFENDANT RYU
### (Civil Conspiracy to Defraud)

72.     Ryu hereby incorporates his responses to Paragraphs 1 through 71 as if fully set forth herein.

73.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies that he conspired together and maliciously and willfully entered into a scheme with Chon to embezzle from BankAsiana.

74.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies that he conspired together and maliciously and willfully entered into a scheme with Chon to embezzle from BankAsiana.

75.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

### FIFTEENTH CLAIM FOR RELIEF
### AGAINST DEFENDANT RYU
### (Breach of Fiduciary Duty)

76.     Ryu hereby incorporates his responses to Paragraphs 1 through 75 as if fully set forth herein.

77.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

78.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies that he conspired together and maliciously and willfully entered into a scheme with Chon to embezzle from BankAsiana.

79.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

### SIXTEENTH CLAIM FOR RELIEF
### AGAINST DEFENDANT RYU
### (Breach of Fiduciary Duty)

80.     Ryu hereby incorporates his responses to Paragraphs 1 through 79 as if fully set forth herein.

81.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

82.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied. Ryu specifically denies that he conspired with Chon to embezzle from BankAsiana and that he converted such funds to his own use and benefit.

83.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

### SEVENTEENTH CLAIM FOR RELIEF
### AGAINST DEFENDANT RYU
### (Unjust enrichment)

84.     Ryu hereby incorporates his responses to Paragraphs 1 through 83 as if fully set forth herein.

85.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

## EIGHTEENTH CLAIM FOR RELIEF
## AGAINST DEFENDANT RYU
**(Conversion)**

86.     Ryu hereby incorporates his responses to Paragraphs 1 through 85 as if fully set forth herein.

87.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

88.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

## NINETEENTH CLAIM FOR RELIEF
## AGAINST DEFENDANT RYU
**(Conversion)**

89.     Ryu hereby incorporates his responses to Paragraphs 1 through 88 as if fully set forth herein.

90.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

91.     The allegations in this paragraph contain conclusions of law to which no response is required, and they are therefore denied. To the extent any response is deemed required, the allegations are denied.

## TWENTIETH CLAIM FOR RELIEF
## AGAINST DEFENDANT KIM
### (Unjust Enrichment)

92.     Ryu hereby incorporates his responses to Paragraphs 1 through 91 as if fully set forth herein.

93.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

## TWENTY-FIRST CLAIM FOR RELIEF
## AGAINST DEFENDANT BERGENFIELD BAGEL & CAFÉ INC.
### (Unjust Enrichment)

94.     Ryu hereby incorporates his responses to Paragraphs 1 through 93 as if fully set forth herein.

95.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

## TWENTY-SECOND CLAIM FOR RELIEF
## AGAINST DEFENDANT MAYWOOD BAGEL INC.
### (Unjust Enrichment)

96.     Ryu hereby incorporates his responses to Paragraphs 1 through 95 as if fully set forth herein.

97.     Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

**TWENTY-THIRD CLAIM FOR RELIEF**
**AGAINST DEFENDANT UB'S PIZZA & BAGEL INC.**
**(Unjust Enrichment)**

98.   Ryu hereby incorporates his responses to Paragraphs 1 through 97 as if fully set forth herein.

99.   Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

**TWENTY-FOURTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT UB'S BAGEL & CAFÉ INC.**
**(Unjust Enrichment)**

100.   Ryu hereby incorporates his responses to Paragraphs 1 through 99 as if fully set forth herein.

101.   Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

**TWENTY-FIFTH CLAIM FOR RELIEF**
**AGAINST DEFENDANT UBK BAGELS CORP.**
**(Unjust Enrichment)**

102.   Ryu hereby incorporates his responses to Paragraphs 1 through 101 as if fully set forth herein.

103.   Allegations in this paragraph address other Defendants in this case and are denied for lack of information.

**AFFIRMATIVE DEFENSES**

**FIRST DEFENSE**

The Amended Complaint fails to state any claim or cause of action against Ryu upon which relief can be granted.

**SECOND DEFENSE**

The Amended Complaint and claims for relief against Ryu are barred by the doctrines of acquiescence, estoppel, release, waiver, ratification, and/or laches.

**THIRD DEFENSE**

The Amended Complaint and claims for relief against Ryu are barred by the applicable statutes of limitation.

**FOURTH DEFENSE**

The Amended Complaint and claims for relief are barred by majority approval.

**FIFTH DEFENSE**

The Amended Complaint and claims for relief are barred by lack of a fiduciary relationship.

**SIXTH DEFENSE**

The Amended Complaint and claims for relief against Ryu are barred by the business judgment rule.

**SEVENTH DEFENSE**

The Amended Complaint and claims for relief against Ryu are barred, in whole or in part, by Wilshire Bank's failure to mitigate its claimed damages.

**EIGHTH DEFENSE**

Wilshire Bank's damages, if any, were caused by persons over whom Ryu had no control.

## NINTH DEFENSE

The Amended Complaint and claims for relief against Ryu are barred by the terms of the contract between the parties.

## TENTH DEFENSE

The Amended Complaint and claims for relief against Ryu are barred by Wilshire Bank's failure to exercise due diligence.

## ELEVENTH DEFENSE

Wilshire Bank has failed to provide sufficient specificity in the Amended Complaint to permit a full response thereto, and Ryu accordingly reserves the right to raise any and all defenses under the applicable law at such time as Wilshire Bank adequately pleads the facts underlying the Amended Complaint.

## TWELFTH DEFENSE

Ryu reserves the right to raise any other defenses, affirmative or otherwise, including any defense set forth in Fed. R. Civ. P. 8(c), which may be revealed in discovery or other further proceedings in this action.

WHEREFORE, Defendant Suk Joon Ryu, a/k/a James S. Ryu, respectfully requests that judgment be entered in his favor; that Plaintiff's Amended Complaint be dismissed with prejudice; that Defendant be awarded his attorneys' fees and costs of this action pursuant to Section 9.1(c) of the Amended and Restated Bylaws of BankAsiana (dated March 13, 2008), N.J. Stat. § 17:9A-250(D), Section 3.17 of the Bylaws of Wilshire State Bank (dated May 17, 1988), and Section 317(d) of the

California General Corporation Law; and that the Court award such other relief it deems just and proper.

## COUNTERCLAIMS AND CROSS-CLAIMS

### THE PARTIES

1.      Defendant-Counterclaim Plaintiff-Third-Party-Counterclaim Plaintiff-Cross-claim Plaintiff, Suk Joon Ryu, a/k/a James S. Ryu ("Ryu"), is an individual residing at 630 Rita Drive, River Vale, New Jersey 07675, and is a citizen of the State of New Jersey.

2.      Plaintiff-Counterclaim Defendant Wilshire Bank ("Wilshire Bank") is a commercial bank chartered under the laws of the State of California, with its principal place of business located at 3200 Wilshire Boulevard, Los Angeles, California 90010.

3.      Third-Party-Counterclaim Defendant Kwon Ho Jung is an individual who, upon information and belief, resides at 539 3rd Street, Palisades Park, NJ 07650, and a citizen of the State of New Jersey.

4.      Third-Party-Counterclaim Defendant Jae Whan Yoo is an individual who, upon information and belief, resides at 430 N. Oakhurst Drive, Unit 305, Beverly Hills, CA 90210, and/or 4331 Commonwealth Avenue, La Canada Flintridge, CA 91011, and is a citizen of the State of California.

5.     Third-Party-Counterclaim Defendant Steven S. Koh is an individual who, upon information and belief, resides at 10580 Wilshire Boulevard, Apt. 92, Los Angeles, CA 90024, and is a citizen of the State of California.

6.     Third-Party-Counterclaim Defendant Lisa Pai is an individual who, upon information and belief, resides at 1854 W. 180th Street, Torrance, CA 90504, and is a citizen of the State of California.

7.     Defendant-Cross-claim Defendant Miye Chon, a/k/a Karen Chon ("Chon"), is an individual who, upon information and belief, resides at 11 3rd Street, Englewood Cliffs, New Jersey 07632, and is a citizen of the State of New Jersey.

8.     Defendant-Cross-claim Defendant Tae Jong Kim ("Kim"), the husband of Chon, is an individual who, upon information and belief, resides at 11 3rd Street, Englewood Cliffs, New Jersey 07632, and is a citizen of the State of New Jersey.

9.     Upon information and belief, Defendant-Cross-claim Defendant Bergenfield Bagel & Cafe Inc., d/b/a Cafe Clair ("Bergenfield Bagel"), is a corporation organized and existing under the laws of the State of New Jersey, with offices at 11 3rd Street, Englewood Cliffs, New Jersey 07632, and is a citizen of the State of New Jersey.

10.     Upon information and belief, Defendant-Cross-claim Defendant Maywood Bagel Inc. ("Maywood Bagel"), is a corporation organized and existing under the laws of the State of New Jersey, with offices at 239 East Brinkerhoff Avenue, 2nd Floor, Palisades Park, New Jersey 07650.

11.     Upon information and belief, Defendant-Cross-claim Defendant UB's Pizza & Bagel Inc. ("UB's Pizza"), is a corporation organized and existing under the laws of the State of New Jersey, with offices at 54-06 Bergenline Avenue, West New York, New Jersey 07093.

12.     Upon information and belief, Defendant-Cross-claim Defendant UB's Bagel & Cafe Inc. ("UB's Bagel"), is a corporation organized and existing under the laws of the State of New Jersey, with offices at 615 South Avenue West, Westfield, New Jersey 07090.

13.     Upon information and belief, Defendant-Cross-claim Defendant UBK Bagels Corp., d/b/a Franklin Bagels & Cafe ("UBK Bagels"), is a corporation organized and existing under the laws of the State of New York, with offices at 192 New Hyde Park Road, Franklin Square, New York 11010.

## JURISDICTION

14.     This Court has subject matter jurisdiction over these counterclaims and cross-claims because there is supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367.

## STATEMENT OF FACTS

**A.     Background of James Ryu**

15.     The story in this case begins on October 1, 2013, when Wilshire Bank acquired by merger a smaller but very attractive Korean American bank in New Jersey by the name of BankAsiana.

16.     Prior to the merger, Ryu was BankAsiana's Senior Vice President and Chief Operating Officer as well as one of its founders.

17.     Ryu had a long and very successful career in the field of Korean American banking that began an as employee of Wilshire Bank in California from approximately 1989 to 1990.

18.     Ryu took a leave of absence from banking to pursue a successful career as a rock musician (guitarist) in Korea from approximately 1991 to 1998.

19.     In 1998, Ryu returned to banking by taking employment with what was then known as Center Bank in California (now known as BBCN Bank), another Korean American bank. Ryu received substantial experience and training as a banker at Center Bank from 1998 to 2006, and he became particularly knowledgeable and effective working with bank regulators at the state and federal level.

20.     In 2006, at the suggestion of several more senior colleagues, Ryu moved to New Jersey to start a Korean American bank for a group of investors and to handle the bank regulatory aspect of the operations as well as to handle general management duties as the number two executive at the bank with his senior colleague Hong Sik Hur in the role of CEO and President.

21.     After founding BankAsiana with Hur, Ryu successfully managed and ran BankAsiana with Hur and in October 2013 they sold it on behalf of the investors (which included Hur but not Ryu) to Wilshire Bank.

22.     On October 4, 2013, following the merger, Ryu's employment with Wilshire Bank ended, as he had expected because high-level officers of a bank being purchased in a merger are typically not kept after the merger.

23.     Following the sale of BankAsiana, Ryu intended to continue his career as a banker by doing what he did at BankAsiana with a new banking venture.

24.     Ryu began working with a group of investors who planned to inject new capital in and revitalize a financially troubled New Jersey chartered bank named New Millennium Bank.

25.     Ryu was hired to complete the change-in-control and other regulatory applications with the Federal Deposit Insurance Corporation ("FDIC") and New Jersey Department of Banking and Insurance ("NJDOBI").

26.     Ryu was slated to become the bank's Chief Operating Officer following approval of the regulatory applications.

27.     Ryu had a legal right to work with New Millennium Bank. There were no legal restrictions preventing him from working with another bank.

**B.      Chon's Embezzlement and False Accusation Against Ryu**

28.     On March 21, 2016, Chon plead guilty in federal court to embezzling $1,431,195.22 from BankAsiana between 2010 and October 2013. She also agreed to pay back that amount.

29.     In general, Chon perpetrated the embezzlement by preying on unsuspecting BankAsiana certificate of deposit ("CD") accountholders, primarily elderly accountholders.

26

30.   Some of the details of Chon's embezzlement are known because she made statements to Wilshire Bank in 2014 and she was deposed in this case on June 23, 2016, although the deposition has not yet been completed.

31.   According to Chon, she committed the embezzlement by stealing cash from the bank vault and entering phony entries in the CD accounts to cover up the cash withdrawals.

32.   She first started stealing from accounts of people she knew well: her husband's sister-in-law and her husband's business associate.

33.   Chon admitted that she began her embezzlement without the knowledge of Ryu. She claimed that sometime after she began to embezzle funds from the first two accounts, Ryu approached her after a monthly meeting at BankAsiana's Palisades Park branch and said that he had discovered her embezzlement activities (although she did not say how he had supposedly discovered it), and he asked her to lend him $30,000. This is inconsistent with what Chon told Wilshire Bank employees on January 23, 2014, when she said that he at first asked for $10,000.

34.   Chon admitted that she had no relationship outside of work with Ryu. He did not supervise or hire her, they did not work together, and they had virtually no dealings except at monthly meetings or on rare occasions when bank business required it.

35.   She claims she thought about his request for $30,000 for a couple of days and then decided to give him that amount.

36.     She testified that after the first $30,000 Ryu asked for loans on ten occasions between 2010 and 2013, and she gave him a total of $700,000-$800,000 in cash on those ten occasions. She later testified in the same deposition that she only gave him $700,000. She said that she either delivered the cash to him (all in $100 bills) in an envelope at his office at the Palisades Park branch or he picked up the cash at the Fort Lee branch where she worked.

37.     She testified that she thought she was just loaning the money to Ryu, and that he would give it back to her so she could put it back. She said she raised this with him, but he never gave her any of the money back.

38.     She testified that Ryu said he would compensate her for loaning him a large sum of money that she had stolen, which she interpreted to mean that perhaps he would help her to get promoted at BankAsiana.

39.     Chon admitted at her deposition that there are no records or witnesses to corroborate her claim that she gave $700,000 to Ryu. When asked how she knew that it was that amount of money she allegedly gave to Ryu, she said she kept track of the amount in her head.

40.     At her deposition, Chon first testified that she kept $200,000-$300,000, and used it to pay her personal debts, her husband's business debts, and her family's living expenses. She then testified that she kept $500,000.

41.     She also admitted to stealing the entire $1,431,195.22, so for the sake of argument if she gave Ryu $700,000 she must have kept over $730,000.

42.     Chon's story about the embezzlement and Ryu's alleged involvement is obviously untrue. In reality, Chon kept or used for herself all of the money she stole. She likely still has a large amount of the money she stole hidden for her use or that of her husband after she is released from prison.

43.     Although Chon and Ryu did not work together and had no relationship except on a very limited basis at work, Chon knew more about Ryu than he realized because she was very close friends with Irene Lee, a Wilshire Bank employee who was a close friend and confidant of Ryu.

44.     Chon also was aware that Ryu had invested in a business that had failed and owed money to a lender for the money lost in those investments. This was common knowledge at Wilshire Bank and made Ryu a logical person for Chon to falsely accuse.

45.     Chon cannot account for the vast majority of the money she embezzled, so she decided to blame Ryu to give her a cover story that explains her failure to account for the large sum she stole and also to protect her husband from being blamed for her embezzlement.

**C.     Wilshire Bank's Investigation of Chon's Embezzlement**

46.     In January 2014, Wilshire Bank received reports of irregularities with several customers' certificate of deposit accounts.

47.     On January 22, 2014, Irene Lee ("Lee"), Operations Administration Officer for Wilshire Bank, called Chon to discuss the irregularities. Chon was not retained by Wilshire Bank following the merger with BankAsiana.

48.     On that same day, Chon met with Lee and another Wilshire Bank employee at Wilshire Bank's Palisades Park branch. At that meeting, Chon confessed to embezzling money from BankAsiana for years.

49.     Chon did not mention Ryu during the January 22 meeting.

50.     The next day, January 23, 2014, Chon met with Lee and other Wilshire Bank employees at the bank's Palisades Park branch. Chon again confessed to stealing money from BankAsiana, but this time claimed that Ryu was also involved in the embezzlement.

51.     Wilshire Bank began an investigation that was reported internally in two separate memoranda, one dated February 25, 2014, and the other dated March 28, 2014.

52.     These memoranda show that Wilshire Bank knew that Chon worked for Liberty Bank in New York prior to Wilshire Bank's 2006 acquisition of it. They reported that "[a]t that time, Karen left the Bank through maternity leave under a cloud of suspicion since she and/or her employees had several cash shortages, of which $10,000 was the largest." They also reported that Liberty Bank employees in 2006 "searched her purse and found $4,000 in cash," but "[s]he was not terminated and arrested for the cash shortage due to lack of sufficient evidence."

53.     The two memoranda reached no conclusions about the alleged role of James Ryu. The first memoranda said that "[i]n conclusion, the embezzlement was a well-conceived plan to defraud the Bank, regardless of whether [Ryu] was

involved." The second memoranda reported no conclusion about whether Ryu was involved.

54.     Wilshire Bank's investigation unearthed no evidence to suggest that Ryu played a role in Chon's well-conceived plan to defraud BankAsiana or its customers, and the reminder that Chon had a past history of embezzlement at Liberty Bank in New York combined with her admission that she actually stole over $1 million while employed at BankAsiana should have caused Wilshire Bank to be suspicious about trusting anything she said, particularly her attempt to blame Ryu, when she obviously needed to manufacture an explanation for her inability to explain what she did with all of the money she stole and also to deflect blame from her husband.

**D.     Wilshire Bank's Seizure of Ryu's Bank Account**

55.     In mid-January 2014, Ryu began having problems with his Wilshire Bank debit card and accessing funds in his checking account. The balance of the account at that time was approximately $54,000.

56.     Ryu called several Wilshire Bank employees to resolve the debit card issue, but the issue was not resolved.

57.     Ryu later discovered that the debit card issue was a result of Wilshire Bank's freezing of his checking account ostensibly in response to Chon's false accusation that he conspired with her to embezzle money. Wilshire Bank's seizure of his account remained in effect until October 9, 2015.

31

58.     On February 7, 2014, Wilshire Bank's outside counsel, Michael Yi,
wrote to Ryu claiming that Wilshire Bank had a right to seize Ryu's $54,000 on
deposit.

59.     As the supposed legal basis for this claim that Wilshire Bank could
essentially take Ryu's $54,000, Yi referred to a deposit account agreement that
provided that "[i]f we are uncertain regarding the legality of any transaction, we
may . . . freeze the amount in question while we investigate the matter."

60.     Wilshire Bank had no uncertainty regarding the legality of any
transaction involving Ryu's bank account and it never had any right to seize his
funds.

61.     Even if Wilshire Bank initially had a right to freeze the account
pending an investigation of any transaction that raised questions about legality,
that would not have justified Wilshire Bank to seize and hold the funds on deposit
indefinitely, as it sought to do against Ryu.

62.     Ryu's undersigned counsel brought these points to the attention of
Wilshire Bank in 2015, after counsel began work on this case, and Wilshire Bank
initially refused to give Ryu back his money.

63.     Ryu's counsel then threatened to file a motion for a court order forcing
Wilshire Bank to give Ryu his money back.

64.     On or about October 9, 2015, Wilshire Bank through Yi finally gave
Ryu his $54,000. Wilshire Bank did this because it knew that it had intentionally

violated Ryu's rights and that the Court would likely force it to give the money back.

### E.    Ryu's Meetings with Chon

65.    On or about January 30, 2014, Chon called Ryu and asked to meet in person that day. Chon said she needed to discuss something important, but would not explain over the phone. Ryu thought this was a strange request, but agreed to meet with her.

66.    Ryu met Chon at a diner in Englewood, New Jersey. At the meeting, Chon stated that she had embezzled approximately $1 million from BankAsiana, that she had confessed to Wilshire Bank, and that she had told Wilshire Bank that Ryu was involved.

67.    Ryu was shocked. He asked Chon why she implicated him when he was not involved in the embezzlement. Chon simply responded "I don't know."

68.    Ryu insisted that Chon meet with Wilshire Bank employees immediately and tell them that she lied about Ryu's involvement. Chon agreed to do so.

69.    On or about February 13, 2014, Chon called Ryu and asked to meet again in person.

70.    Ryu and Chon met at a lounge in Englewood Cliffs, New Jersey. Chon again agreed to tell Wilshire Bank that she lied about Ryu's involvement.

71.    Ryu has not spoken to Chon since their meeting on or about February 13, 2014.

**F.      Ryu's Meeting with Wilshire Bank**

72.     In early February 2014, Ryu learned that Wilshire Bank had repeated Chon's lies that Ryu was involved in her embezzlement.

73.     Ryu also learned that Wilshire Bank made a claim with its insurance carrier to recover the losses incurred by Chon's embezzlement and was preparing to submit a Suspicious Activity Report ("SAR") with the Financial Crimes Enforcement Network.

74.     Ryu was perplexed as to why Wilshire Bank had not reached out to him to discuss Chon's lies as part of their investigation and due diligence in preparing the Suspicious Activity Report, so he called Lisa Pai ("Pai"), Executive Vice President and Chief Legal and Human Resources Officer of Wilshire Bank, on or about February 10, 2014.

75.     During their conversation, Pai confirmed that Wilshire Bank was investigating Ryu for possible embezzlement due to Chon's statement. Ryu vehemently denied any involvement in the embezzlement and said that Chon had lied.

76.     Pai also confirmed that Wilshire Bank froze Ryu's checking account while they were investigating him.

77.     Pai then demanded Ryu preserve all files on his two BankAsiana computers and return them. Ryu responded that BankAsiana permitted him to take and keep the computers, which were of little value, but he would preserve all files and return the computers to show his cooperation and that he had nothing to hide.

78.     Pai stated that she would be in the New Jersey area within the week and asked Ryu if he would be willing to meet with her and Wilshire Bank's outside counsel, Michael M. Yi ("Yi"). Ryu responded yes.

79.     Ryu met with Pai and Yi at a hotel in Fort Lee, New Jersey, on or about February 13, 2014, just after his meeting with Chon described above.

80.     Ryu told them that Chon lied about his involvement in the embezzlement, and that he had no knowledge of the embezzlement until his meeting with Chon on January 30, 2014.

81.     Ryu informed Pai and Yi that he met with Chon right before their meeting and that he recorded his conversation with her. Ryu told them that Chon said she would tell Wilshire Bank that she lied about his involvement in the embezzlement. Ryu played a portion of the recording for Pai and Yi.

82.     Ryu again asked about Wilshire Bank's seizure of his checking account. Pai and Yi confirmed that the bank froze the account during their investigation of Chon's accusation of Ryu's involvement in the embezzlement.

83.     Pai and Yi asked Ryu about his relationship with Chon. Ryu explained that there was no personal relationship between him and Chon, and that he did not hire, supervise, or promote her. He further explained that he did not communicate with her regularly, and that his only meetings with her were monthly lunches with managers in BankAsiana's Fort Lee branch to discuss the branch's operations.

84.     Pai and Yi extensively questioned Ryu about New Millennium Bank and recent transactions in his Wilshire Bank checking account.

85. Ryu confirmed that he began working with New Millennium Bank in October 2013, and that recent deposits were payments for his work for New Millennium Bank.

86. Ryu asked for the basis of Pai and Yi's questions regarding New Millennium Bank and payments he received for his work, and what relationship they thought they had with Chon's embezzlement. Yi responded that they wanted to determine whether Ryu was involved in the embezzlement because he needed money to invest in New Millennium Bank. Ryu explained that he was not an investor.

87. It was clear to Ryu based on the questions that Wilshire Bank was angry that he was working for a competitor.

88. Pai and Yi then asked Ryu about two failed retail businesses Ryu was involved with in 2010. Again, Ryu questioned the relationship between these businesses in 2010 and Chon's embezzlement. Pai and Yi provided no explanation.

89. Finally, Pai and Yi asked Ryu to return the computers. Ryu again explained that BankAsiana explicitly allowed Ryu to keep the computers. Ryu confirmed that he preserved all files on the computers and that they were in his car. Ryu explained that there was personal information saved on the computers that he wanted back. Pai agreed to schedule a time for Ryu to retrieve the personal information, but later reneged on her offer.

90.     Ryu provided the computers to Pai at the end of the meeting. He has

had no access to them since that date and Pai has never returned his personal

information on the computers.

**G.    Wilshire Bank's Actions to Harm Ryu**

91.     Wilshire Bank was extremely angry that, after just purchasing

BankAsiana at a premium, Ryu and a group of other Korean Americans were

setting up New Millennium Bank as a competitor to Wilshire Bank in the attractive

northern New Jersey market for Korean American banking customers.

92.     Upon information and belief, Wilshire Bank also wanted to conceal its

role in enabling Chon to embezzle funds while at BankAsiana. Wilshire Bank

acquired Liberty Bank of New York in 2006, shortly after Chon left under not just a

strong suspicion but a near certainty that she had embezzled funds while at Liberty

Bank.

93.     Wilshire Bank knew that Chon had returned to work in banking at

BankAsiana following her departure from Liberty Bank in New York at least by the

time it began its due diligence on BankAsiana and most likely long before then. Yet

Wilshire Bank never communicated anything to BankAsiana about Chon's past

history of embezzlement.

94.     For these reasons, Wilshire Bank decided to take action to harm Ryu.

In addition to denying him access to his own $54,000, WB took further actions

against Ryu as alleged below.

95.     After Wilshire Bank learned in January 2014 that Chon had embezzled funds while at BankAsiana, it decided to accept her implausible story that Ryu had conspired with her to embezzle funds, because it wanted to use this as a pressure point to harm Ryu and prevent New Millennium Bank from opening a new Korean American bank in northern New Jersey.

96.     First, it filed a false SAR with the Financial Crimes Enforcement Network, which, upon information and belief, suggested that Ryu was involved in Chon's embezzlement. Either the SAR or the substance of the allegations against Ryu repeated by Wilshire Bank subsequently made its way to the NJDOBI resulting in Ryu losing his job with New Millennium Bank.

97.     Second, it defamed him to the investors of New Millennium Bank, which contributed to him to losing his job and become completely unemployable. Specifically, on or about February 10, 2014, Kwon Ho Jung ("Jung"), the branch manager of Wilshire Bank's Palisades Park branch, told the New Millennium Bank investors during a teleconference about Chon's false allegations about Ryu and that Pai was coming out from Los Angeles and Ryu would be arrested for embezzlement.

98.     Third, it filed this lawsuit against Ryu even though it had no grounds for any of its claims against him. Wilshire Bank has admitted in discovery that it has no evidence in support of its embezzlement-related claims against Ryu other than Chon's testimony, which is untruthful. Its conversion claims related to the computers are bogus. Ryu had the permission of BankAsiana to take the computers, which were very old and effectively worthless at the time. And, Wilshire Bank's

trade secrets claims asserted in the initial Complaint were also meritless, which Wilshire Bank later acknowledged as it dropped these claims when it filed the Amended Complaint.

**H.     New Millennium Bank's Termination of Ryu**

99.    On or around February 17, 2014, Ryu met with the New Millennium Bank investors regarding Chon's allegation against Ryu and Wilshire Bank's ongoing investigation of the embezzlement.

100.    Ryu told the investors that the allegations were false and that he had recorded his February 13 meeting with Chon where she agreed to tell Wilshire Bank that she lied about Ryu's involvement.

101.    The investors agreed to move forward with the revitalization plan for New Millennium Bank and keep Ryu in his current role on the project.

102.    In or around early March 2014, the FDIC approved the change-in-control application Ryu submitted on behalf of New Millennium Bank.

103.    The following week, the NJDOBI rejected the change-in-control application Ryu submitted on behalf of New Millennium Bank because Wilshire Bank had repeated the false embezzlement allegations against Ryu. Upon information and belief, the NJDOBI learned from Wilshire Bank the false embezzlement allegations against Ryu.

104.    On or about March 25, 2014, the New Millennium Bank investors terminated Ryu's involvement with the bank because of the defamatory statements made by Wilshire Bank and Jung to the New Millennium Bank investors.

105.    Two and a half years later, in June 2016, New Millennium Bank engaged Ryu as a consultant. This was the very first job that Ryu was able to get because of the defamatory effect of being accused by Wilshire Bank of being an embezzler.

**I.     Jae Whan Yoo, Steven S. Koh, and Wilshire Bank Defamed Ryu in a 2015 Book They Published and Distributed Worldwide**

106.    Sometime in or around 2015 or 2016, Wilshire Bank distributed throughout its branches and possibly elsewhere a hard cover book entitled *Wilshire Bank 1980 to 2015*.

107.    The book indicates that Wilshire Bank owns the copyright but the publisher is listed as Wilshire Bank President and CEO Jae Whan Yoo ("Yoo").

108.    On information and believe, Yoo worked with an editor to prepare the book and Wilshire Bank's Chairman Steven S. Koh ("Koh") substantially participated with Yoo to produce and publish the book, including the section that defamed Ryu as explained below.

109.    The book is obviously intended to promote Wilshire Bank and its leaders, particularly Koh. For example, the book contains a section entitled "Chairman Steven S. Koh the indefatigable leader."

110.    As its title suggests, the book recounts the history of Wilshire Bank from 1980 to 2015. This includes the role of various executives of Wilshire Bank over the years, as well as developments specific to Wilshire Bank, including the acquisition of various smaller Korean American banks, such as Liberty Bank in

40

New York, where Chon worked. It also reports on other events, such as the 1992 Los Angeles riots.

111.    One of the things covered in the book is the 2013 acquisition by Wilshire Bank of BankAsiana, which it saw as "the largest and oldest Korean-American Bank in New Jersey, which boasted strong asset quality." According to the book, 14 other banks competed with Wilshire Bank to acquire BankAsiana, but Wilshire Bank closed the deal because of Koh's "superb negotiating skills and uncanny ability to make speedy decisions."

112.    The book also referred to the "smooth integration" of BankAsiana into Wilshire Bank, with one notable exception:

> One negative event marred the progress when a civil suit was filed against employees and related personnel of the former BankAsiana; one employee was also later had been indicted by a federal grand jury on charges of embezzling customers' funds. While actual events took place prior to the acquisition, they underscored the importance, for the entire Wilshire Bank staff, of maintaining the highest standards of ethics.

113.    The employees referred to in the quoted language from the book were clearly Chon and Ryu and the civil suit is this action.

114.    By the quoted language, Wilshire Bank, Yoo, and Koh intended to and did communicate that Wilshire Bank had valid grounds to sue Ryu for embezzlement, which communication was false and defamatory as to Ryu.

**J.**     **Harm to Ryu from the Defamation**

115.    Wilshire Bank's, Jung's, Yoo's, Koh's, and Chon's actions have caused serious harm to Ryu. They have harmed his reputation, they have harmed him financially, and they have caused him great emotional stress and pain.

**1.**     **Harm to Reputation**

116.    Prior to the false and defamatory communications published by Wilshire Bank, Jung, Yoo, Koh, and Chon, as alleged above, Ryu had a reputation for business integrity. It took Ryu many years of hard work and dedication to develop this reputation.

117.    Defendants' false and defamatory statements suggested to people in the Korean American and broader communities that Ryu was an untrustworthy person who stole money.

118.    As a result of Defendants' false and defamatory statements, Ryu's reputation has been substantially damaged.

**2.**     **Financial Harm**

119.    Ryu has suffered serious financial harm as a result of Wilshire Bank's, Jung's, Yoo's, Koh's, and Chon's false and defamatory statements.

120.    But for Wilshire Bank's, Jung's, Yoo's, Koh's, and Chon's actions and false statements, Ryu would have achieved significant professional and financial success in the foreseeable future as a high-ranking officer and executive at New Millennium Bank.

121.    As a direct result of Wilshire Bank's, Jung's, Yoo's, Koh's, and Chon's actions and false statements, Ryu was completely unable to work from February 2014 to June 2016, when New Millennium Bank hired him as a consultant because it recognized the falsity of Wilshire Bank's, Jung's, Yoo's, Koh's, and Chon's false and defamatory statements.

122.    This inability to work and earn income, combined with the taking by Wilshire Bank of his $54,000 on deposit, caused Ryu severe financial strain. He was forced to cease making payments on the mortgage for his home and to apply for and receive food stamps to feed his family. The family his home is now in foreclosure proceedings, with a Sheriff Sale scheduled for September 16, 2016, and Ryu has been forced to incur debt for attorneys' fees to defend his interest in the foreclosure case.

123.    Ryu almost ran out of money to support his family, including two minor children, before his counsel forced Wilshire Bank to give him back his $54,000 on deposit in October 2015, and his personal and family financial situation is still precarious.

124.    In addition to the harm caused to date, Wilshire Bank's, Jung's, Yoo's, Koh's, and Chon's false and defamatory statements will cause continuing financial harm to Ryu, as he will not be able to earn nearly the same income that he would have been able to earn in the prime of his career but for Wilshire Bank's, Jung's, Yoo's, Koh's, and Chon's false and defamatory statements. As a result of Wilshire

Bank's, Jung's, Yoo's, Koh's, and Chon's false and defamatory statements, Ryu's short- and long-term earning capacity has been substantially impaired.

### 3.      Emotional Stress and Pain

125.    The year 2014 was harrowing for Ryu, as he watched his reputation and professional career go down the drain and he and his family suffered financially as a result of Wilshire Bank's, Jung's, Yoo's, Koh's, and Chon's false and defamatory statements.

126.    This caused Ryu to experience great emotional stress and pain, which was exacerbated by Ryu's realization that people in the Korean American and broader communities viewed him as a thief and embezzler.

127.    In 2015, Ryu watched his wife's father die knowing that in his father-in-law's eyes he (Ryu) was disgraced as an embezzler. Ryu was also disgraced in the eyes of his own mother, who learned of his loss of job and the embezzlement accusation before she developed acute and irreversible dementia in 2015. Ryu will always regret that his mother's last memories were of him not as a successful banker, but as an accused embezzler.

### 4.      Harm from Other Unlawful Conduct

128.    In addition to the harm caused by Wilshire Bank's, Jung's, Yoo's, Koh's, and Chon's false and defamatory conduct, Ryu was also substantially harmed by Wilshire Bank's withholding without right his $54,000 on deposit. It caused him financial harm, as discussed above, and it also caused great emotional stress and pain, knowing that he had saved $54,000 for a rainy day and now that he critically

needed the money Wilshire Bank denied him the most basic right of a banking customer—the right to receive funds deposited with the bank back on demand.

129.   Ryu was also harmed by Pai's taking of the information on the computer and hard drive that BankAsiana had given to him and her offensive refusal to honor her commitment to return that information to him. He has a right to return of the computers, because BankAsiana permitted him to take them home and keep them shortly before the merger closed, given that they were then worth not more than $750 combined, if that, but he really does not care about getting them back, except for his personal data, such as photos and family videos, which had value only to him.

130.   Pai contributed to Ryu's emotional stress and pain by taking and then refusing to return this personal data.

## COUNTERCLAIMS

### COUNT I
### DEFAMATION
### (Against Kwon Ho Jung and Wilshire Bank)

131.   Ryu hereby incorporates the averments of Paragraphs 1 through 130 as fully set forth herein.

132.   Prior to the conduct alleged above, Ryu was a successful and well-known banker with a reputation for integrity.

133.   Jung and Wilshire Bank published false and defamatory statements about Ryu to the New Millennium Bank investors, specifically, that Ryu conspired

with Chon to embezzle money from BankAsiana and that he was "going to be arrested" for embezzlement.

134.    These statements harmed Ryu's reputation and caused him to lose his position at New Millennium Bank.

135.    A listener of the statements about Ryu would understand that Jung and Wilshire Bank were calling Ryu a thief and criminal and were otherwise impugning his reputation for honesty, integrity, and fairness in his business and professional life.

136.    Jung's and Wilshire Bank's statements have caused actual injury to Ryu by harming his reputation and standing in the banking industry and humiliating him.

137.    Jung's and Wilshire Bank's conduct as set forth above has been outrageous, malicious, unprivileged, and intended to cause deliberate harm to Ryu.

138.    Wilshire Bank is additionally liable for the defamation alleged in this count under the legal doctrine of respondeat superior, which provides that an employer is liable for the actions taken by an employee acting in the scope of their employment.

## COUNT II
## DEFAMATION
### (Against Wilshire Bank)

139.    Ryu hereby incorporates the averments of Paragraphs 1 through 138 as fully set forth herein.

140.    Prior to the conduct alleged above, Ryu was a successful and well-known banker with a reputation for integrity.

141.    On information and belief, Wilshire Bank published false and defamatory statements about Ryu to the NJDOBI and the Financial Crimes Enforcement Network via its SAR, specifically, that Ryu conspired with Chon to embezzle money from BankAsiana, or it communicated this information to the NJDOBI in some other way as well.

142.    These statements harmed Ryu's reputation and caused him to lose his position at New Millennium Bank.

143.    A listener and/or reader of the statements about Ryu would understand that Wilshire Bank was calling Ryu a thief and criminal and was otherwise impugning his reputation for honesty, integrity, and fairness in his business and professional life.

144.    Wilshire Bank's statements have caused actual injury to Ryu by harming his reputation and standing in the banking industry and humiliating him.

145.    Wilshire Bank's conduct as set forth above has been outrageous, malicious, unprivileged, and intended to cause deliberate harm to Ryu.

## COUNT III
## DEFAMATION
### (Against Jae Whan Yoo, Steven S. Koh, and Wilshire Bank)

146.    Ryu hereby incorporates the averments of Paragraphs 1 through 145 as fully set forth herein.

147.   Prior to the conduct alleged above, Ryu was a successful and well-known banker with a reputation for integrity.

148.   Yoo, Koh, and Wilshire Bank published false and defamatory statements about Ryu in the book *Wilshire Bank 1980 to 2015,* specifically, that Wilshire Bank had good grounds to sue Ryu in this action for embezzlement.

149.   These statements harmed Ryu's reputation.

150.   A reader of the statements about Ryu would understand that Yoo, Koh, and Wilshire Bank were calling Ryu a thief and criminal and were otherwise impugning his reputation for honesty, integrity, and fairness in his business and professional life.

151.   Yoo's, Koh's, and Wilshire Bank's statements have caused actual injury to Ryu by harming his reputation and standing in the banking industry and humiliating him.

152.   Yoo's, Koh's, and Wilshire Bank's conduct as set forth above has been outrageous, malicious, unprivileged, and intended to cause deliberate harm to Ryu.

153.   Wilshire Bank is additionally liable for the defamation alleged in this count under the legal doctrine of respondeat superior, which provides that an employer is liable for the actions taken by an employee acting in the scope of their employment.

## COUNT IV
## <u>ILLEGAL SEIZURE OF FUNDS ON DEPOSIT</u>
### (Against Wilshire Bank)

154.    Ryu hereby incorporates the averments of Paragraphs 1 through 153 as fully set forth herein.

155.    Ryu maintained a checking account with Wilshire Bank with $54,035.63 in it.

156.    The checking account was subject to Wilshire Bank's Deposit Account Agreement.

157.    The Deposit Account Agreement was a valid and binding contract between Ryu and Wilshire Bank.

158.    Under the Deposit Account Agreement, Wilshire Bank was required to allow Ryu access to his money in the account.

159.    In January 2014, Wilshire Bank seized the account and the money in it, and refused to make it available to Ryu despite repeated requests to do so.

160.    Wilshire Bank ultimately provide the money to Ryu via check in the amount of $54,035.63 on or about October 12, 2015.

161.    Wilshire Bank had no justifiable reason to seize the funds.

162.    Wilshire Bank's seizure of funds in the account constituted breach of the Deposit Account Agreement.

163.    Wilshire Bank seized the funds to harm Ryu because it was angry that Ryu was working with a competitor bank.

164.    Wilshire Bank's conduct as set forth above has been outrageous, malicious, unprivileged, and intended to cause deliberate harm to Ryu.

165.    Further, New Jersey law recognizes that consequential damages proximately caused by Wilshire Bank's wrongful dishonor as well as punitive damages are available to Ryu. *See Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857 (N.J. 1988).

## COUNT V
## TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP
### (Against Wilshire Bank)

166.    Ryu hereby incorporates the averments of Paragraphs 1 through 165 as fully set forth herein.

167.    Ryu had an established expectation of a contractual relationship with the New Millennium Bank investors to submit change-in-control and other regulatory applications with the FDIC and NJDOBI and then become the Chief Operation Officer of the bank.

168.    Wilshire Bank was not a party to the contract between Ryu and the New Millennium Bank investors.

169.    Wilshire Bank actually interfered with the contract by informing the New Millennium Bank investors and the NJDOBI of Chon's false accusation about Ryu's role in her embezzlement.

170.    Wilshire Bank's interference was intentional because it was angry that Ryu was working with a competitor bank.

171.    Wilshire Bank's interference was without justification.

172.    Wilshire Bank's interference has caused actual injury to Ryu by preventing him from achieving significant professional and financial success in the foreseeable future as high-ranking officer and executive at New Millennium Bank.

173.    Wilshire Bank's conduct as set forth above has been outrageous, malicious, unprivileged, and intended to cause deliberate harm to Ryu.

**COUNT VI**
**CONVERSION**
**(Against Lisa Pai and Wilshire Bank)**

174.    Ryu hereby incorporates the averments of Paragraphs 1 through 173 as fully set forth herein.

175.    Ryu provided his two computers to Pai on or about February 13, 2014, following his meeting with her and Yi.

176.    Ryu informed Pai that there was personal information saved on the computers that he wanted back, including photographs and family videos, personal banking information, and pass codes to Ryu's accounts.

177.    Pai agreed to schedule a time for Ryu to retrieve the personal information, but later reneged on her offer.

178.    By intentionally refusing to provide the personal information on the computers to Ryu, Pai has intentionally deprived him of his rights to the information, including without limitation, his rights to enjoy, use, and/or possess the information.

179.    Pai has deprived Ryu of his rights and personal information on the computers without his consent and without lawful justification.

180.    Wilshire Bank is liable for conversion under the legal doctrine of respondeat superior, which provides that an employer is liable for the actions taken by an employee acting in the scope of their employment.

181.    Ryu seeks an order requiring Pai and Wilshire Bank to provide the personal information to Ryu. Further, Ryu seeks to recover any and all damages he has or will incur as a result of Pai's and Wilshire Bank's wrongful conversion.

182.    Pai and Wilshire Bank have withheld Ryu's personal information as part of Wilshire Bank's actions to harm and punish Ryu.

183.    Pai's and Wilshire Bank's conduct as set forth above has been outrageous, malicious, unprivileged, and intended to cause deliberate harm to Ryu.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff-Third-Party-Counterclaim Plaintiff Suk Joon Ryu, a/k/a James S. Ryu, respectfully prays for judgment against Counterclaim Defendant Wilshire Bank and Third-Party-Counterclaim Defendants Kwon Ho Jung, Jae Whan Yoo, Steven S. Koh, and Lisa Pai, as follows:

a.    Damages for economic harm, harm to reputation, physical harm, and emotional distress;

b.    Punitive Damages;

c.    Return of Ryu's personal information from the computers;

d.    Attorneys' fees and costs of this action pursuant to Section 9.1(c) of the Amended and Restated Bylaws of BankAsiana (dated March 13, 2008), N.J. Stat. §

17:9A-250(D), Section 3.17 of the Bylaws of Wilshire State Bank (dated May 17, 1988), and Section 317(d) of the California General Corporation Law; and

e.   Further relief as this Court deems just and proper.

## CROSS-CLAIMS

### COUNT I
### DEFAMATION
### (Against Chon)

184.   Ryu hereby incorporates the averments of Paragraphs 1 through 183 as fully set forth herein.

185.   Prior to the conduct alleged above, Ryu was a successful and well-known banker with a positive reputation for integrity.

186.   Chon published false and defamatory statements about Ryu to Wilshire Bank and others, specifically that Ryu conspired with her to embezzle money from BankAsiana.

187.   These statements harmed Ryu's reputation.

188.   A listener of the statements about Ryu would understand that Chon was calling Ryu a thief and criminal and were otherwise impugning his reputation for honesty, integrity, and fairness in his business and professional life.

189.   Chon's publication of the false statements about Ryu was done maliciously and knowingly.

190.   Chon's statements have caused actual injury to Ryu by harming his reputation and standing in the banking industry and humiliating Ryu.

191.    Chon's conduct as set forth above has been outrageous, malicious, unprivileged, and intended to cause deliberate harm to Ryu.

## COUNT II
## CONTRIBUTION UNDER NJ STAT. § 2A:53A-3
**(Against Chon, Kim, Bergenfield Bagel, Maywood Bagel, UB's Pizza, UB's Bagel, UBK Bagels)**

192.    Ryu hereby incorporates the averments of Paragraphs 1 through 191 as fully set forth herein.

193.    Pursuant to N.J. Stat. § 2A:53A-3, Ryu avers a demand for contribution from Chon, Kim, Bergenfield Bagel, Maywood Bagel, UB's Pizza, UB's Bagel, and UBK Bagels if it is judicially determined that the allegations in Wilshire Bank's Complaint permit a claim of recovery against Ryu, which Ryu expressly denies.

## COUNT III
## CONTRIBUTION AND INDEMNIFICATION
**(Against Chon, Kim, Bergenfield Bagel, Maywood Bagel, UB's Pizza, UB's Bagel, UBK Bagels)**

194.    Ryu hereby incorporates the averments of Paragraphs 1 through 193 as fully set forth herein.

195.    Ryu denies any wrongdoing or liability to Wilshire Bank.

196.    If it is judicially determined that the allegations in Wilshire Bank's Complaint permit a claim of recovery, then in such event, Ryu avers that said recovery would be attributable to solely to the acts of Chon, Kim, Bergenfield Bagel, Maywood Bagel, UB's Pizza, UB's Bagel, and UBK Bagels (collectively, the "Cross-

claim Defendants"), such that one or more of the Cross-claim Defendants are alone liable to Wilshire Bank and no liability rests with Ryu.

197.   If it is judicially determined that Ryu is in any way liable for the claims set forth in Wilshire Bank's Complaint or for any damages which Wilshire Bank may have sustained, which Ryu expressly denies, then one or more of the Cross-claim Defendants are jointly liable with Ryu to Wilshire Bank, and/or liable over to Ryu by way of contribution and indemnification to Ryu for any verdict recoverable by Wilshire Bank.

## PRAYER FOR RELIEF

WHEREFORE, Cross-claim Plaintiff Suk Joon Ryu, a/k/a James S. Ryu, respectfully prays for judgment against Cross-claim Defendants Miye Chon, a/k/a Karen Chon, Tae Jong Kim, Bergenfield Bagel & Café Inc., Maywood Bagel Inc., UB's Pizza & Bagel Inc., UB's Bagel & Café Inc., and UBK Bagels Corp., d/b/a Franklin Bagels & Café, as follows:

a.   Damages for economic harm, harm to reputation, physical harm, and emotional distress;

b.   Punitive Damages;

c.   Attorneys' fees and costs; and

d.   Further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Ryu demands a trial by jury on all issues so triable.

Respectfully submitted,

STEVE HARVEY LAW LLC

By:    s/ David V. Dzara
        Stephen G. Harvey*
        David V. Dzara (DD 8297)
        1880 John F. Kennedy Blvd.
        Suite 1715
        Philadelphia, PA 19013
        (215) 438-6600
        steve@steveharveylaw.com
        david@steveharveylaw.com

*Attorneys for Defendant-Counterclaim Plaintiff-Third-Party-Counterclaim Plaintiff-Cross-claim Plaintiff, Suk Joon Ryu, a/k/a James S. Ryu*
*\*Admitted pro hac vice*

Dated:  July 22, 2016

## <u>CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2</u>

I certify that the matter in controversy is not the subject of any other action

pending in any court, arbitration, or administrative proceeding.


s/ David V. Dzara
David V. Dzara

Dated:  July 22, 2016

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2016, I electronically filed the foregoing

Answer and Affirmative Defenses to Wilshire Bank's Amended Complaint,

Counterclaims and Cross-claims with the United States District Court for the

District of New Jersey by using the CM/ECF system. I certify that the following

parties or their counsel of record are registered as ECF filers and that they will be

served by the CM/ECF system:

| | |
|---|---|
| Michael M. Yi<br>Jane Chuang<br>Lee Anav Chung White & Kim, LLP<br>156 Fifth Avenue<br>Suite 303<br>New York, NY 10010<br><br>*Attorneys for Plaintiff-Counterclaim*<br>*Defendant, Wilshire Bank* | Matthew J. Jeon<br>Matthew Jeon, P.C.<br>2400 Lemoine Avenue<br>Suite 201<br>Fort Lee, NJ 07024<br><br>*Attorneys for Defendants-Cross-claim*<br>*Defendants, Miye Chon, a/k/a Karen*<br>*Chon, Tae Jong Kim, Bergenfield Bagel*<br>*& Café Inc., d/b/a Café Clair,*<br>*Maywood Bagel Inc., UB's Pizza &*<br>*Bagel Inc., and UB's Bagel & Café Inc.* |

s/ David V. Dzara
David V. Dzara