**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BANK OF HOPE, | : | CIVIL ACTION NO. 14-1770 (JLL) |
| Plaintiff, | : | **O P I N I O N** |
| v. | : | |
| MIYE CHON, et al., | : | |
| Defendants. | : | |
| | : | |
| SUK JOON RYU, | : | |
| Counterclaim Plaintiff, | : | |
| v. | : | |
| BANK OF HOPE, | : | |
| Counterclaim Defendant. | : | |
| | : | |
| SUK JOON RYU, | : | |
| Third-Party Plaintiff, | : | |
| v. | : | |
| KWON HO JUNG, et al., | : | |
| Third-Party Defendants. | : | |

**LINARES, District Judge**

Bank of Hope (hereinafter, "the Bank"), in its capacity as the plaintiff in this

action, alleges that the defendant Suk Joon Ryu, who was employed as an officer by the Bank, and other defendants took part in a scheme to embezzle approximately $1.5 million for their personal use by making unauthorized withdrawals from several customer accounts at the Bank. The Bank further alleges that those defendants falsified records in order to conceal those withdrawals. (See dkt. 92.)[1]

Ryu, in turn, asserts the following relevant claims against the Bank in its capacity as a counterclaim defendant, and against Bank officers Kwon Ho Jung, Jae Whan Yoo, Steven S. Koh, and Lisa Pai in their capacities as third-party defendants: one defamation claim against the Bank and Jung (designated by Ryu as "Count I"); one defamation claim against the Bank, Yoo, and Koh (designated by Ryu as "Count II"); one claim concerning the seizure of Ryu's funds on deposit against the Bank (designated by Ryu as "Count III"); and a claim concerning conversion against the Bank and Pai (designated by Ryu as "Count V"). (See dkt. 111 at 44–50.)

The Bank, Jung, Yoo, Koh, and Pai have filed a joint motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the aforementioned Counts insofar as Ryu asserts those Counts against each of them. (See dkt. 118 through dkt. 118-8; dkt. 129.) Ryu opposes the entire joint motion. (See dkt. 126 through dkt. 126-2.)[2]

---

[1] The Court will refer to documents by the docket entry numbers and the page numbers imposed by the Electronic Case Filing System.

[2] In Count IV of the Counterclaims and the Third-Party Claims, Ryu alleges that the Bank and Jung tortiously interfered with Ryu's employment relationship with another banking institution, discussed infra. (See dkt. 111 at 47.) Count IV is not at issue in this motion.

The Court will resolve the joint motion upon a review of the papers and without oral argument.  See L.Civ.R. 78.1(b).  The Court presumes that the parties are familiar with the factual context and the procedural history of this action.  For the following reasons, the Court will:

- grant the part of the joint motion that seeks dismissal of Count I and Count II pursuant to Rule 12(b)(6); and

- deny the part of the joint motion that seeks dismissal of Count III and Count V pursuant to Rule 12(b)(6).

## BACKGROUND

Chon and Ryu were employed by the Bank as officers in the Bank's New Jersey offices.[3]  Ryu voluntarily left his position at the Bank in October 2013 after a merger, and he took a new position with New Millennium Bank.  (See dkt. 111 at 24.)

In January 2014, the Bank discovered that large unauthorized withdrawals had been made from several accounts between 2010 and 2013.  The Bank's investigation pointed to Chon as being the culprit, and it notified law enforcement.  But when Chon was questioned by the Bank's employees and by law enforcement, she implicated Ryu as taking part in the scheme to embezzle the funds.  Chon was eventually criminally charged.

---

[3] The name of the Bank has changed several times over the course of this litigation due to mergers with other banking institutions, e.g., BankAsiana and Wilshire Bank.  Those name changes are not relevant to the Court's disposition of this motion.

Ryu was neither arrested nor criminally charged, and he denied having any involvement in the acts of embezzlement. However, the Bank and Jung advised New Millennium Bank that Chon had implicated Ryu in the scheme, and New Millennium Bank terminated Ryu's employment soon thereafter.

Chon has since entered a plea of guilty to one count of embezzlement of funds by a bank employee, one count of bank fraud, and one count of aggravated identity theft. (See dkt. 111 at 25.) See United States v. Chon, Crim. No. 15-77, ECF No. 36 at 1 (the November 2016 judgment entered in Chon's criminal case). In addition, as part of the plea, Chon agreed to pay the Bank back for the amount embezzled. See United States v. Chon, Crim. No. 15-77, ECF No. 36 at 8 (order of forfeiture entered in Chon's criminal case).

## LEGAL STANDARD FOR RULE 12(b)(6)

It is not necessary for the Court to restate the standard for resolving a motion made pursuant to Rule 12(b)(6) to dismiss counterclaims or to dismiss third-party claims, because that standard has been already enunciated. See New Skies Satellites, B.V. v. Home2US Commc'ns, Inc., 9 F.Supp.3d 459, 464–65 (D.N.J. 2014) (setting forth the standard for the dismissal of counterclaims; citing Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); State College Area Sch. Dist. v. Royal Bank of Canada, 825 F.Supp.2d 573, 591 (M.D. Pa. 2011) (setting forth the standard for the dismissal of third-party claims; citing Iqbal and Twombly); PPG Indus., Inc. v. Generon IGS, Inc., 760 F.Supp.2d 520, 524 (W.D. Pa. 2011) (setting forth the

standard for the dismissal of counterclaims; citing <u>Iqbal</u>); <u>see also</u> <u>United States v. Jallali</u>,

478 Fed.Appx. 578, 579 (11th Cir. 2012) (setting forth the standard for the dismissal of

counterclaims; citing <u>Iqbal</u>); <u>Martco Ltd. P'ship v. Bruks Inc.</u>, 430 Fed.Appx. 332, 334

(5th Cir. 2011) (setting forth the standard for the dismissal of third-party claims; citing

<u>Iqbal</u> and <u>Twombly</u>).

<b>DISCUSSION</b>

**I.    Count I**

Ryu alleges in Count I that Jung, while acting on behalf of the Bank, published

false and defamatory statements about Ryu to New Millennium Bank.  Specifically, Ryu

alleges that Jung told the investors at New Millennium Bank that Ryu conspired with

Chon to embezzle money, and that Ryu was going to be arrested.  (<u>See</u> dkt. 111 at 37.)

Ryu further alleges that those statements caused New Millennium Bank to terminate his

employment, and otherwise harmed his reputation for integrity in the banking industry.

(<u>See</u> dkt. 111 at 34, 44.)

The Bank and Jung move to dismiss Count I, and argue that it is time-barred.  (<u>See</u>

dkt. 118-1 at 10.)  Specifically, they point out that Jung made the allegedly defamatory

statements to New Millennium Bank on February 10, 2014, and that Ryu did not assert

this particular defamation claim in his pleadings until July 22, 2016.  (<u>See</u> dkt. 118-1 at

10–11.)  <u>See</u> N.J.S.A. 2A:14-3 (setting forth the statute of limitations for a civil claim of

libel or slander as being within one year after publication).

In opposition to this part of the motion, Ryu argues that Count I relates back to the

pleadings that he filed in 2014.  (<u>See</u> dkt. 25 (Ryu's initial Counterclaims filed in May

5

2014); dkt. 36 (Ryu's initial Amended Counterclaims filed in June 2014).) <u>See</u>

Fed.R.Civ.P. 15(c)(1) (concerning the relation back of amendments to pleadings).

      The Court finds Ryu's argument concerning the relation back doctrine to be

without merit. The allegedly defamatory statement was made in February 2014. Thus,

Ryu had until February 2015 to assert this particular claim, but he failed to do so, despite

amending his pleadings on two occasions before the statute of limitations expired. <u>See</u>

N.J.S.A. 2A:14-3.

      Furthermore, none of the previous pleadings filed by Ryu provided fair notice to

the Bank and Jung about this potential defamation claim, as would be required in order to

permit Ryu to rely upon the relation back doctrine. <u>See</u> <u>Glover v. Fed. Deposit Ins.</u>

<u>Corp.</u>, 698 F.3d 139, 145–46 (3d Cir. 2012). The Court's review of Ryu's previous

pleadings reveals that Ryu asserted defamation allegations based upon the

commencement of this action and the release of the initial complaint to the public, but

Ryu asserted no allegations concerning an instance wherein Jung communicated with

New Millennium Bank about Ryu.

      It is not that Ryu, in his own words, failed to "originally plead the act of

defamation with razor sharp precision." (Dkt. 126 at 29.) The Court concludes that Ryu

failed to plead this particular alleged act of defamation *at all* until the statute of

limitations had long expired. <u>See</u> <u>Bensel v. Allied Pilots Ass'n</u>, 387 F.3d 298, 310 (3d

Cir. 2004) (holding that in order for relation back to be allowed, the opposing party must

be given fair notice of the fact situation and the legal theory upon which the amending

party wishes to proceed, but that a newly-asserted claim must be treated with caution). The Court also notes that Ryu was aware as early as February 2014 that the allegedly defamatory statement had been made, and thus he cannot reasonably argue that the contents of that statement were hidden from him until after the statute of limitations had expired.  Thus, Count I will be dismissed.

## II.    Count II

Ryu alleges in Count II that the Bank, Yoo, and Koh published a false and defamatory statement about Ryu in a commemorative book put out by the Bank about its history. Specifically, Ryu alleges that the book states that the Bank had good grounds to sue Ryu for embezzlement.  (See dkt. 111 at 38, 45.)  However, the allegedly defamatory statement printed in the commemorative book is the following:

> One negative event marred the progress when a civil suit was filed against employees and related personnel of the [Bank]; one employee was also later . . . indicted by a federal grand jury on charges of embezzling customers' funds.  While actual events took place prior to [a certain merger], they underscored the importance, for the entire [Bank] staff, of maintaining the highest standards of ethics.

(Dkt. 111 at 39; dkt. 118-7 at 5–6.)

The Bank, Yoo, and Koh, in moving to dismiss Count II, argue that the assertions from this statement are not false, and thus a claim for defamation does not lie here.  (See dkt. 118-1 at 17.)  See Mangan v. Corporate Synergies Grp., Inc., 834 F.Supp.2d 199, 204 (D.N.J. 2011) (setting forth the elements of a claim for defamation).  Ryu argues in contrast that it is obvious that the statement refers to him.

The Court finds that the statement presents the events that occurred when the Bank discovered Chon's embezzlement conduct in a matter-of-fact and truthful fashion; specifically, that the Bank brought this civil action against certain unnamed employees, and that one of those unnamed employees was indeed indicted criminally.  Liability cannot lie on a claim for defamation when, as is the situation here, the statements at issue are not false.  See LaPaz v. Barnabas Health Sys., 634 Fed.Appx. 367, 371 (3d Cir. 2015), cert. denied, 137 S.Ct. 188 (2016).  Furthermore, liability cannot lie for defamation even when the statement at issue is arguably not completely accurate.  See Carrabba v. Morgat, No. 12-6342, 2014 WL 229280, at *13 (D.N.J. Jan. 17, 2014). Thus, the part of the motion seeking dismissal of Count II must be granted, because "truth is an absolute defense to defamation."  Ditzel v. Univ. of Med. & Dentistry of N.J., 962 F.Supp. 595, 605 (D.N.J. 1997).

The Court's determination concerning Count II is further buttressed by the fact that Ryu is not even mentioned by name in the allegedly defamatory statement.  Liability for defamation simply cannot lie when, as is the situation here, the statement lacks specific identifying information.  See Ditzel, 962 F.Supp. at 605.[4]

---

[4] Yoo and Koh are citizens of California, and also argue that Count II should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over them.  (See dkt. 118-1 at 12.)  However, the commemorative book was distributed to all of the Bank's branches, including the branches in New Jersey; Ryu's alleged injuries were felt in New Jersey; and those injuries were allegedly caused by the aforementioned statements that Yoo and Koh purposely directed toward New Jersey.  See Daimler AG v. Bauman, 134 S.Ct. 746, 754–55 (2014); Marten v. Godwin, 499 F.3d 290, 296–97 (3d Cir. 2007).  Thus, the Court would have specific personal jurisdiction over Yoo and Koh for this case.  In any event, because the Court is disposing of

8

### III.   Count III

Ryu alleges in Count III that the Bank breached the relevant account agreement with its depositors by freezing an account in January 2014 that Ryu kept at the Bank containing approximately $54,000, and by not returning the money to him until October 2015. Ryu further alleges that the Bank froze his funds because he would be working for New Millennium Bank, which the Bank viewed as being a competitor. (See dkt. 111 at 34, 46–47.) Ryu adds that he was unable to find work in the banking industry after his employment with New Millennium Bank was terminated, and that the Bank knew that he desperately needed those funds in order to pay his basic expenses.

However, the Bank argues in support of the dismissal of Count III that it was expressly authorized to freeze Ryu's account under the terms of the account agreement while it investigated whether Ryu had embezzled funds. That agreement states that if the Bank is "uncertain regarding the legality of any transaction, we may . . . freeze the amount in question while we investigate further." (See dkt. 111 at 30.)

It is true that a contract is enforceable when its terms are clear and unambiguous. See Green v. America Online (AOL), 318 F.3d 465, 472 (3d Cir. 2003). But even though

---

Count II under Rule 12(b)(6), it is not necessary to discuss the issue of personal jurisdiction over Yoo and Koh at this juncture. See G.A.M.E. Apparel, LLC v. Prisco, No. 12-1339, 2012 WL 4662311, at *1 n.2 (D.N.J. Oct. 1, 2012) (in granting a motion to dismiss pursuant to Rule 12(b)(6), the district court found it unnecessary to address an argument raised concerning Rule 12(b)(2)).

9

the Bank was generally authorized to freeze an account if it suspected that the funds

therein originated from illegal activity, what is at issue in Count III is whether the Bank

acted appropriately in exercising that authority.  At this juncture, Count III presents a

plausible claim:  that Ryu was falsely implicated by Chon; that the Bank should not have

frozen the funds based on Chon's statements; and thus, that Ryu was wrongfully deprived

of access to his money for over a year.  See Twombly, 550 U.S. at 555 (stating that a

court should permit a claim to proceed if it exceeds the bounds of mere possibility and

enters the realm of plausibility).  Count III thus presents allegations that go beyond "more

than a sheer possibility that [the Bank] has acted unlawfully."  Iqbal, 556 U.S. at 678.

Ryu has given the Court a "reason to believe that [he] has a reasonable likelihood of

mustering factual support" for Count III, and thus the part of the motion seeking its

dismissal is denied.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

## IV.    Count V

Ryu asserts a claim for conversion against the Bank and Pai in Count V.

Specifically, he alleges that the Bank gave him two computers to keep for his personal

use, and that he stored personal information on them based upon the Bank's previous

assurances that the computers were his to keep even after his employment with the Bank

ended, but that Pai on behalf of the Bank took the computers back in February 2014

without justification.  (See dkt. 111 at 49–50.)

In support of the part of the motion that seeks dismissal of Count V, the Bank

argues that the computers were not for Ryu to keep, that he removed them from the

Bank's premises without permission in September 2013, and that the computers contained the Bank's confidential and proprietary information.  Furthermore, the Bank and Pai argue that Ryu entered into a severance agreement with the Bank when he left, and that the agreement mandated that Ryu was to return all Bank property in his possession to the Bank.  (See dkt. 118-1 at 22.)  Ryu argues in opposition to the motion that a resolution of Count V at this stage is premature.

The part of the motion seeking dismissal of Count V is denied.  Although Ryu may have been required to return all of the Bank's property in his possession to the Bank, he states a plausible claim that the two computers were not the Bank's property, and that the computers were actually his to keep.  Furthermore, it is curious that the Bank did not seek the return of the two computers when Ryu left his position there, and that it waited several months before demanding their return.  Thus, it is plausible that the Bank indeed gave permission to Ryu to keep the computers as his own, whether or not he remained employed by the Bank, and that the Bank and Pai were not actually authorized to take the two computers back.  See Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

## CONCLUSION

The part of the motion seeking dismissal of Count I and Count II from Ryu's Counterclaims and Third-Party Claims is granted. However, the part of the motion seeking dismissal of Count III and Count V from Ryu's Counterclaims and Third-Party Claims is denied. The Court will issue an appropriate order.

**JOSE L. LINARES**
United States District Judge

**Dated:** January ___4th___ , 2017