NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK OF HOPE, | CIVIL ACTION NO. 14-1770 (JLL) |
| Plaintiff, | OPINION |
| v. | |
| MIYE CHON, *et al.*, | |
| Defendants. | |
| SUK JOON RYU, | |
| Counterclaim Plaintiff, | |
| v. | |
| BANK OF HOPE, | |
| Counterclaim Defendant. | |

**LINARES**, Chief District Judge

The plaintiff, Bank of Hope (hereinafter, "the Bank"), alleges that the defendant Suk Joon Ryu (hereinafter, "Ryu"), who was employed as an officer by the Bank, and other defendants embezzled in excess of one million dollars from the Bank by facilitating unauthorized withdrawals from several customer accounts. (ECF No. 92.) The Bank has brought — among other claims — claims against Ryu: (1) related to that alleged

embezzlement for conversion, fraud, breach of fiduciary duty, and unjust enrichment (hereinafter "the Embezzlement Claims"); and (2) for conversion based upon allegations that Ryu removed two of the Bank's computers (hereinafter, "the Two Computers") from the Bank's premises without permission (hereinafter, "the Computer Conversion Claims"). (*Id.* at 11–14.)

Ryu has brought — among other counterclaims — a counterclaim against the Bank for breach of the deposit agreement between them (hereinafter, "the Breach Counterclaim"). (ECF No. 111 at 46–47.) Specifically, Ryu alleges that the Bank wrongfully withheld about $54,000 of his funds from January 2014 through October 2015 that he had deposited in his personal account at the Bank. (*Id.*)

Ryu now moves pursuant to Federal Rule of Civil Procedure 56 (hereinafter, "Rule 56") for summary judgment in his favor on the Embezzlement Claims, the Computer Conversion Claims, and the Breach Counterclaim. (ECF No. 253 through ECF No. 253-2; ECF No. 254; ECF No. 255; ECF No. 256 through ECF No. 256-15; ECF No. 257-1 through ECF No. 257-15; ECF No. 258 through ECF No. 258-5; ECF No. 267.) The Bank opposes the motion. (ECF No. 263; ECF No. 264; ECF No. 264-1; ECF No. 265 through ECF No. 265-6; ECF No. 266.)

The Court resolves the motion upon a review of the papers and without oral argument. *See* L. Civ. R. 78.1(b). The Court presumes that the parties are familiar with the factual context and the procedural history of this action. (*See, e.g.*, ECF No. 137 at

1–12 (a previous Opinion from the Court, entered on January 4, 2017, addressing a motion to dismiss); ECF No. 191 at 1–9 (a previous Order from the Court, entered on February 13, 2018, addressing an appeal from a Decision issued by the Magistrate Judge).) For the following reasons, the Court will deny the motion in its entirety.

I. BACKGROUND

A. Chon and Ryu

The defendant Miye Chon (hereinafter, "Chon") and Ryu, who was Chon's supervisor, were employed at certain New Jersey locations of the Bank as officers. (ECF No. 254 at 3.)[1] Ryu voluntarily left his position at the Bank in October 2013 after a merger, and he took a new position with another banking institution. (ECF No. 137 at 3.)

B. Embezzlement Is Discovered

In January 2014, the Bank discovered that large unauthorized withdrawals were made from several customer accounts between 2010 and 2013. (*Id.*) The Bank's investigation pointed to Chon as being the main culprit, and the Bank notified law enforcement. (*Id.*)

C. Chon's Deposition Testimony From June 2016

Upon being questioned by the Bank and federal agents in 2014 concerning the

---

[1] The name of the Bank has changed several times over the course of this litigation due to mergers with other banking institutions, *e.g.*, BankAsiana and Wilshire Bank. Those name changes are not relevant to the Court's disposition of this motion.

unauthorized withdrawals from customer accounts at the Bank, Chon confessed to the following, which she reiterated in the testimony that she provided in her deposition in June 2016 (*see* ECF No. 256-9 at 10–14, 19–20, 23–25, 28–29):

(1) she had made those withdrawals in order to pay off the debts that had been incurred by her husband;

(2) she knew she was behaving in an illegal manner;

(3) Ryu discovered that Chon was embezzling funds, and thereupon asked Chon to embezzle funds for his benefit as well;

(4) she made several unauthorized withdrawals for the express purpose of giving Ryu money approximately ten times between 2010 and 2013 at Ryu's request each time;

(5) she would put cash in an interoffice envelope and then personally deliver $100 bills in amounts between $20,000 and $100,000 to Ryu;

(6) she embezzled approximately $700,000 to give to Ryu during that time period; and

(7) Ryu told Chon that in return he would eventually compensate her or help her in his role as Chon's supervisor at the Bank.

The General Counsel for the Bank confirmed in her own deposition testimony that Chon had indeed admitted to these things when Chon was questioned by the Bank. (*See* ECF No. 265-5 at 146–47.)

Chon testified that she accomplished her acts of embezzlement by manipulating the Bank's computer system in order to make unauthorized withdrawals from the accounts of certain customers of the Bank. (ECF No. 256-9 at 8–10.) In addition, Chon testified that she exploited the Bank's failure to enforce its own protocols for overseeing and controlling transactions. (*Id.*)

Chon further testified that she had heard from other Bank employees that Ryu had incurred large debts related to business activities that were separate from his employment at the Bank. (*Id.* at 30–31; *see also* ECF No. 256-14 at 10 *and* ECF No. 265-5 at 19 (the Bank's General Counsel testifying in her depositions in July 2017 and August 2017 that Ryu "was in such desperate need of money" because "[a]pparently, he had a lot of debts," and that "a lot of employees said [Ryu] was asking around to employees, both his superiors as well as people that reported to him for personal loans and that he was basically pretty desperate"); ECF No. 258-5 at 2 (Chon's statement to federal agents that Ryu had gone into debt due to failed business ventures, and that Ryu asked Chon to embezzle money for him after he found out about Chon's scheme).)

D.  **Criminal Matter**

Chon's embezzlement scheme ultimately came to light when one of the affected customers complained to the Bank about a discrepancy in an account. (ECF No. 265-5 at 10-11.) As a result, Chon: (1) was criminally charged in relation to the embezzlement; (2) "pleaded guilty to bank fraud, embezzlement of funds by a bank employee, and

aggravated identity theft"; and (3) was sentenced to a term of imprisonment and "$1,351,090 in restitution." *United States v. Chon*, 725 F. App'x 125, 126 (3d Cir. 2018) (affirming the sentence issued by the District Court).

E.  **Chon's Deposition Testimony From March 2018**

Chon was deposed again in March 2018 while she was serving her sentence in prison, which was almost two years after her initial deposition in June 2016. (ECF No. 256-12 at 2; ECF No. 256-13 at 2.) However, when Chon was asked during that March 2018 deposition to either clarify or confirm her testimony from her June 2016 deposition, she repeatedly responded with "I don't recall!" and variations thereof. (*See generally* 256-12; ECF No. 256-13.) Nevertheless, Chon testified in that March 2018 deposition in reference to her embezzling conduct that Ryu "forced [her] to do it." (ECF No. 256-12 at 6; *see also id.* at 10 (testifying to the same).)

F.  **Interactions Between The Bank And Ryu After The Embezzlement Was Discovered**

As discussed above, Chon claimed that Ryu took part in the embezzlement scheme when she was questioned by the Bank and by federal agents. However, Ryu was neither arrested nor criminally charged in relation to the embezzlement, and he has denied having any involvement in the embezzlement scheme. (ECF No. 137 at 4.)

Ryu took the Two Computers, which he used during the course of his employment at the Bank, with him for his personal use as he left the Bank in 2013. (ECF No. 255 at

24.) The Bank thereafter wanted to review items that had been stored on the Two Computers as part of its embezzlement investigation, and the Bank demanded that Ryu return the Two Computers soon after it commenced that investigation. (ECF No. 257-1 at 2–3 (the Bank's written demand to Ryu for the return of the Two Computers).) Ryu complied with the Bank's demand in February 2014. (ECF No. 255 at 24.) Ryu claims that the president of the Bank in 2013 gave him permission to keep the Two Computers when he left (ECF No. 265 at 8; ECF No. 265-3 at 3–4), whereas the Bank asserts that Ryu removed the Two Computers from the Bank's premises without permission. (ECF No. 263 at 15–16.)

Ryu also had a personal account at the Bank, which contained approximately $54,000 and which Ryu kept open even after Ryu left his job at the Bank in 2013. (ECF No. 255 at 21.) Upon being informed by Chon of Ryu's alleged involvement in the embezzlement, the Bank froze Ryu's account from January 2014 through October 2015 while it investigated whether Ryu was indeed involved with Chon in embezzling funds. (*Id.*)

## II.  DISCUSSION

### A.  Rule 56

It is not necessary for the Court to restate the standard for resolving a motion for summary judgment made pursuant to Rule 56, because that standard has been already enunciated. *See* Fed. R. Civ. P. 56(a) (providing for an award of summary judgment if

there is no genuine dispute of material fact and the movant is entitled to judgment as matter of law); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (setting forth the standard); *United States ex rel. Kosenke v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (setting forth the standard).

**B.     The Embezzlement Claims**

Ryu argues that he is entitled to summary judgment in his favor on the Bank's Embezzlement Claims because: (1) the viability of those claims hinges solely upon Chon's assertions concerning his alleged involvement in the embezzlement scheme; (2) Chon testified in her March 2018 deposition that she no longer recalled the extent of Ryu's alleged involvement in the embezzlement scheme, thereby diminishing the value of her detailed June 2016 deposition testimony on that subject; and (3) no reasonable jury could find him liable as to the Embezzlement Claims as a result. (ECF No. 255 at 19–20, 27; *see also* ECF No. 267 at 11 (Ryu arguing that "Bank of Hope has no evidence implicating Ryu as a participant in the embezzlement other than Chon's testimony").) Indeed, the Bank's General Counsel testified at her own deposition that the Bank's basis for bringing the Embezzlement Claims against Ryu was based on the information that Chon relayed to the Bank. (*See* ECF No. 256-10 at 4 (when asked "So essentially as for what we're calling direct evidence here [about Ryu's conduct], it was the word of . . . Chon, right?", the General Counsel answered, "Primarily, yes.").)

Ryu argues further that "[b]ecause Chon has without a doubt lied at least once already about Ryu's alleged role in the embezzlement, her testimony is the only evidence linking Ryu to the crime, and she has not been subject to cross-examination about her prior testimony and cannot be subject to cross-examination at trial, there is no way for a rational jury to decide whether Ryu is liable or not without engaging in speculation." (ECF No. 267 at 12; *see also* ECF No. 255 at 28 (Ryu arguing that "Chon is obviously lying about her lack of recollection" in the March 2018 deposition).)

In contrast, the Bank argues that summary judgment should be denied because: (1) despite Chon's professed lack of recall in March 2018, Chon did not alter her detailed June 2016 deposition testimony that Ryu had asked her to embezzle money for him on ten occasions and that she gave him approximately $700,000 overall; (2) Chon simply testified that she could not recall what had occurred four years prior to testifying in March 2018; and (3) it is within the province of the jury to weigh the relative value of Chon's June 2016 deposition testimony against her March 2018 deposition testimony. (ECF No. 263 at 9–11.)

The Court agrees with the Bank and concludes that genuine issues of fact remain as to the merits of the Embezzlement Claims. It is true that in contrast to the detailed testimony that Chon provided in her June 2016 deposition, Chon's March 2018 deposition testimony is lacking in the details concerning Ryu's involvement with the embezzlement. However, Chon did testify in March 2018 that Ryu forced her to

embezzle funds for his benefit, which is consistent with her detailed June 2016 deposition testimony that Ryu asked her to procure funds for him after he discovered her embezzling conduct.

Furthermore, it is for a jury to determine whether Chon's June 2016 deposition testimony, which was provided closer in time to the alleged events at issue, is to be believed in view of her March 2018 deposition testimony, which was provided while Chon was in prison more than four years after the alleged events at issue. *See LaBeau v. Rentzis*, No. 08-6300, 2010 WL 2521764, at *4 (D.N.J. June 14, 2010) (holding in a contract dispute that insofar as a party's inconsistent statements were concerned, "[i]t will be for the jury to determine the credibility of [the witness's] testimony in light of these inconsistencies, not this Court").

This matter presents issues concerning Chon's credibility that must be weighed by a jury, and nothing prevents Ryu from challenging Chon's credibility on cross-examination before a jury. *See Mest v. Cabot Corp.*, 449 F.3d 502, 514 (3d Cir. 2006) (holding that while the credibility of contradictory deposition testimony may be disputed, the summary judgment standard requires the District Court to look at all facts in the light most favorable to the non-moving party and reserve the issues of credibility for a jury); *see also Brunozzi v. Crossmark, Inc.*, No. 13-4585, 2016 WL 112455, at *4 (D.N.J. Jan. 11, 2016) (holding, in a case to recover damages for failure to pay overtime wherein the plaintiff employee provided "inconsistent deposition testimony" about the surrounding

circumstances, that the defendant employer "is not entitled to summary judgment on the basis of [plaintiff's] conflicting deposition testimony," because "[w]hile the conflicting testimony undercuts [plaintiff's] credibility," determining "[w]hich portions of [plaintiff's] deposition testimony are truthful is a job for the jury and not this Court"). Therefore, the part of Ryu's motion wherein he seeks summary judgment in his favor on the Embezzlement Claims is denied.

### C. The Computer Conversion Claims

Ryu argues that he is entitled to summary judgment in his favor on the Computer Conversion Claims. In support, Ryu argues that the president of the Bank at the time of his voluntary departure gave Ryu permission to keep the Two Computers for his personal use regardless of whether Ryu continued his employment with the Bank, and that he stored personal information on the Two Computers as a result. (ECF No. 255 at 24; *see also* ECF No. 265 at 8 (Ryu testifying in his deposition that the Bank's president gave him permission on several occasions to take the Two Computers when he left his employment at the Bank).) Ryu also argues that the Bank has not suffered any damages as a result of the alleged conversion, since he gave the Two Computers back to the Bank. (ECF No. 267 at 12; *see also* ECF No. 255 at 32.)

In contrast, the Bank argues that the Two Computers were not for Ryu to keep, and that Ryu did not have permission to remove them from the Bank's premises when he left the Bank's employment in 2013 because the Two Computers contained the Bank's

confidential and proprietary information. (ECF No. 263 at 14–16.) In addition, the Bank argues that Ryu's alleged conversion of the Two Computers prevented the Bank from using them for the four-month period that they were in Ryu's possession, and that the Bank expended effort in locating the Two Computers once it realized that they were gone, and thus the Bank suffered damages thereby. (*Id.* at 11; *see also* ECF No. 264 at 4, 6 (declaration of Bank's General Counsel asserting the same).)

It is apparent from the Court's recitation of the parties' arguments that genuine issues of fact remain as to whether Ryu converted the Two Computers and whether the Bank suffered any damages as a result of the alleged conversion. Furthermore, the Court notes upon its review of the record that the president of the Bank at the time of Ryu's departure testified in his deposition that he did not give Ryu permission to take the Two Computers for his personal use, thereby adding to the Court's conclusion that issues of fact remain to be weighed by a jury. (ECF No. 265-4 at 3 (when asked, "Did you give [Ryu] permission to take that computer?", the former Bank president answered, "No.").)

In addition, it appears that the determination of whether the Bank was justified in demanding the return of the Two Computers to aid in its embezzlement investigation could be dependent upon the resolution of the Embezzlement Claims that are asserted against Ryu. *See Metex Mfg. Corp. v. Manson*, No. 05-2948, 2008 WL 877870, at *13 n.4 (D.N.J. Mar. 28, 2008) (denying summary judgment on a damages claim in a breach of contract case, because "depending on how the jury resolves whether [the plaintiff] took

reasonable steps to mitigate its damages, [the plaintiff's] recovery of incidental damages may be altered by the jury to reflect its finding"); *Grenci v. Ocean County*, No. 04-5806, 2006 WL 2376914, at *7 (D.N.J. Aug. 15, 2006) (denying summary judgment on an excessive force claim "[i]n light of the varying accounts, and not yet decided invasion of privacy claim").

Furthermore, the Bank may ultimately recover on its Computer Conversion Claims even if its damages are minimal. *See City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. 11-2658, 2014 WL 4755487, at *8 (D.N.J. Sept. 24, 2014) (holding that a conversion claim may proceed for only nominal damages concerning the degree to which the property at issue was allegedly converted). Therefore, the part of Ryu's motion wherein he seeks summary judgment on the Computer Conversion Claims is denied.

### D. The Breach Counterclaim

Ryu argues that he is entitled to summary judgment in his favor on the Breach Counterclaim. In support, Ryu argues that the Bank breached the relevant account agreement that it has with its depositors by freezing the personal account that he kept at the Bank containing approximately $54,000 without justification in January 2014, and by not returning the money to him until October 2015. (ECF No. 255 at 21–24.)

However, the Bank argues in opposition that it was expressly authorized to freeze Ryu's account under the terms of the account agreement while it investigated whether

Ryu had embezzled funds. (ECF No. 263 at 19–21.) As Ryu himself alleges in support of the Breach Counterclaim, that agreement provides that if the Bank is "uncertain regarding the legality of any transaction, we may . . . freeze the amount in question while we investigate further." (ECF No. 111 at 30; ECF No. 255 at 21; *see also* ECF No. 257-7 at 27–28 (the relevant portion of the account agreement).) In addition, the Bank argues that part of the delay in releasing Ryu's account funds was attributable to the fact that discovery had been stayed in this action from February 2015 through June 2015 pending the disposition of Chon's criminal matter. (ECF No. 263 at 21.) Also, the General Counsel for the Bank pointed out that it was difficult to try to trace the origin of the funds in Ryu's account, as "[m]oney can be layered to go through multiple accounts," particularly in view of Ryu's banking expertise. (ECF No. 256-14 at 4.)

The Court concludes that genuine issues of triable fact remain as to whether the Bank acted appropriately in exercising its authority to freeze Ryu's account when the Bank suspected that the funds contained therein originated from the alleged embezzlement scheme. For example, there is a triable issue of fact as to whether the Bank should have frozen Ryu's account based on Chon's statements that Ryu was involved in the scheme, and based on the Bank's belief that Ryu needed funds because Ryu suffered from tremendous personal debt and that he had been seeking personal loans from other employees. (ECF No. 265 at 17.) Furthermore, as the Court has held concerning the resolution of the Computer Conversion Claims, it appears that the

resolution of the Breach Counterclaim could be dependent upon the resolution of the Embezzlement Claims. Therefore, the part of Ryu's motion wherein he seeks summary judgment on the Breach Counterclaim is denied.

### III. CONCLUSION

Ryu's motion for summary judgment is denied, as there are triable issues of fact concerning the Embezzlement Claims, the Computer Conversion Claims, and the Breach Counterclaim. The Court will enter an appropriate Order.

Date: March 11th, 2019

JOSE L. LINARES
Chief Judge, United States District Court