# Exhibit A

**STEVE HARVEY LAW LLC**
By: Stephen G. Harvey
1880 John F. Kennedy Blvd.
Suite 1715
Philadelphia, PA 19103
(215) 438-6600

*Attorney for Crossclaim Plaintiff*
*Suk Joon Ryu, a/k/a James S. Ryu*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **BANK OF HOPE, as successor to Wilshire Bank,** | : : : | |
| Plaintiff, | : : : | |
| v. | : : : | |
| **MIYE CHON, a/k/a Karen Chon, SUK JOON RYU, a/k/a James S. Ryu, TAE JONG KIM, BERGENFIELD BAGEL & CAFÉ INC., d/b/a Café Clair, MAYWOOD BAGEL INC., UB'S PIZZA & BAGEL INC., UB'S BAGEL & CAFÉ INC., and UBK BAGELS CORP., d/b/a Franklin Bagels & Café,** | : : : : : : : : : : : : : | **CASE NO. 2:14-cv-01770-KM-JAD** |
| Defendants. | : : | |
| **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** | : : : | |
| **SUK JOON RYU, a/k/a James S. Ryu,** | : : : | |
| Counterclaim Plaintiff, | : : : | |
| v. | : : : | |
| **BANK OF HOPE, as successor to Wilshire Bank,** | : : | |

| | |
|---|---|
| :<br>**Counterclaim Defendant.**<br>:<br>**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***<br>:<br>**SUK JOON RYU, a/k/a James S. Ryu,**<br>:<br>Third-Party Counterclaim Plaintiff,<br>:<br>v.<br>:<br>**LISA PAI,**<br>:<br>Third-Party Counterclaim Defendant.<br>:<br>**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***<br>:<br>**SUK JOON RYU, a/k/a James S. Ryu,**<br>:<br>Crossclaim Plaintiff,<br>:<br>v.<br>**MIYE CHON, a/k/a Karen Chon, TAE JONG KIM, BERGENFIELD BAGEL & CAFÉ INC., d/b/a Café Clair, MAYWOOD BAGEL INC., UB'S PIZZA & BAGEL INC., UB'S BAGEL & CAFÉ INC., and UBK BAGELS CORP., d/b/a Franklin Bagels & Café,**<br>:<br>Crossclaim Defendants. | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : |

## OFFER OF PROOF

Crosssclaim Plaintiff James S. Ryu submits this Offer of Proof regarding the harm he has suffered as a result of the false and defamatory accusation of

2

Crossclaim Defendant Karen Chon that he had participated with her in Chon's embezzlement at BankAsiana.

### A. Background

1. The embezzlement by Chon took place while she was employed by BankAsiana, which was acquired by merger by a predecessor of Bank of Hope (Wilshire Bank) on October 1, 2013.

2. Prior to the merger, Ryu was BankAsiana's senior vice president and chief operating officer as well as one of its founders.

3. Ryu had a long and very successful career in the field of Korean American banking that began as an employee of Wilshire Bank in California from approximately 1989 to 1990.

4. In 2006, Ryu moved to New Jersey to start a Korean American bank for a group of investors and to handle the bank regulatory aspect of the operations as well as to handle general management duties. This became BankAsiana.

5. After founding BankAsiana, Hur and Ryu successfully managed and ran it until October 2013 when it was the subject of a merger/sale to Wilshire Bank.

6. Following the merger, Ryu intended to continue his career as a banker by doing what he did at BankAsiana with a new banking venture.

7. Ryu began working with a group of investors who planned to inject new capital in and revitalize a financially troubled New Jersey chartered bank named New Millennium Bank.

8. Ryu was hired to complete the change-in-control and other regulatory applications with the Federal Deposit Insurance Corporation and New Jersey Department of Banking and Insurance.

9. Ryu was slated to become the new bank's chief operating officer following approval of the regulatory applications.

10. As a result of Chon's false and defamatory accusation against Ryu, in March 2014 the Bank filed this action alleging that Ryu had participated in the embezzlement with Chon.

11. The Bank continued to litigate its claims against Ryu until April 2019, when the Court granted the Bank's voluntary motion to dismiss its claims against Ryu with prejudice.

12. On or about March 25, 2014, the New Millennium Bank investors terminated Ryu's involvement with the bank because of the filing of this action and the reporting of it in several news publications that followed including USA Today.

13. Ryu did not work again except on a short-term temporary basis in 2016, until April 2021, when he was hired by New Millennium Bank at a salary of $120,000, which is $40,000 less than his salary in 2013.

14. Prior to this recent employment, the only work Ryu had been able to secure since February 2014 had also been with New Millennium Bank, but only on a temporary basis, for several months in 2016.

### B. Harm to Ryu

15. Chon's lies caused several types of harm to Ryu. They harmed his reputation, they harmed him financially, and they caused him great emotional stress and pain manifesting physically.

#### a. Harm to Reputation

16. Prior to the false accusation, Ryu had a reputation for business integrity. It took Ryu many years of hard work and dedication to develop this reputation.

17. The false allegations of embezzlement against Ryu were reported in several publications including USA Today, and the publications are still available online.

18. The false allegations against Ryu suggested to people in the Korean American and broader communities that Ryu was an untrustworthy person who stole money.

19. As a result of Chon's false statements, Ryu's reputation has been substantially and permanently damaged.

#### b. Financial Harm

20. Ryu has suffered serious financial harm as a result of Chon's false accusations.

21. But for Chon's actions, Ryu would have achieved significant professional and financial success in the future as a founder and the second highest ranking officer and executive at New Millennium Bank.

22. As a direct result of Chon's actions, Ryu was completely unable to work from February 2014 to April 2021, with the exception of some temporary employment in 2016.

23. This inability to work and earn income caused Ryu severe financial strain. He was forced to cease making payments on the mortgage for his home and to apply for and receive food stamps to feed his family.

24. He fell behind on his mortgage payment and the family home went into foreclosure proceedings. He fought them off for a long time, but eventually he and his family were forced to move out of their house and rent an inferior house.

25. Ryu numerous times almost ran out of money to support his family, including two minor children during this time, and his personal and family financial situation is still precarious.

26. Additionally, in May or June 2014, Ryu liquidated his entire 401(k) retirement plan, and in June 2015, Ryu surrendered his life insurance policy. Both actions were necessary for Ryu and his family to have money to survive.

27. Ryu sold off most of his possessions to support his family.

28. In addition to the harm caused to date, Chon's lies will cause continuing financial harm to Ryu, as he will not be able to earn nearly the same income that he would have been able to earn in the prime of his career but for the accusation. As a result, Ryu's short- and long-term earning capacity has been substantially impaired.

### c. Emotional Stress and Pain

29. The year 2014 was harrowing for Ryu, as he watched his reputation and professional career go down the drain and he and his family suffered financially and emotionally as a result of the embezzlement accusation.

30. This caused Ryu to become depressed and experience great emotional stress and pain, which was exacerbated by Ryu's realization that people in the Korean American and broader communities viewed him as a thief and embezzler.

31. In 2014, Ryu watched his wife's father die knowing that in his father-in-law's eyes he (Ryu) was disgraced as an embezzler. Ryu was also disgraced in the eyes of his own mother, who learned of his loss of job and the embezzlement accusation before she developed acute kidney damage and irreversible dementia in 2015. Ryu will always regret that his mother's last memories were of him not as a successful banker, but as an accused embezzler. Ryu's mother passed away in 2017.

32. The emotional stress on Ryu continued from February 2014 through the conclusion of the Bank's claims against him in April 2019 and continuing to the present.

33. It included all the stress and effort of dealing with the litigation against him combined with the sense of financial and emotional depression that accompanied the destruction of his reputation.

34. It included the stress for Ryu of watching the impact of his downfall on his wife and son and daughter.

35. The emotional stress has lessened somewhat since April 2021 when Ryu finally again secured gainful employment, but he continues to suffer and expects that he will require professional treatment that he now cannot afford for years in the future.

**C. Conclusion**

36. For the above reasons, Ryu has suffered great harm for which he should be compensated by Chon.

37. Ryu hereby incorporates the accompanying Forensic Psychiatric report of Susan J. Fiester, M.D., and the Vocational Economic Evaluation of Gary A. Young and Katherine A. Young, and the Declaration of Suk Joon Ryu a/k/a James S. Ryu.

Respectfully submitted,

STEVE HARVEY LAW LLC

Dated: August 30, 2021    By:   /s/ Stephen G. Harvey
Stephen G. Harvey
1880 John F. Kennedy Blvd.
Suite 1715
Philadelphia, PA 19103
(215) 438-6600
steve@steveharveylaw.com

*Attorneys for Crossclaim Plaintiff
Suk Joon Ryu, a/k/a James S. Ryu*

8