# Exhibit C




Young Vocational Analytics
*Vocational Economic Life Care Planning*

August 25, 2021

Steve G. Harvey, Esq.
Steve Harvey Law LLC
1880 John F. Kennedy Blvd.
Suite 1715
Philadelphia, PA 19103

**VOCATIONAL ECONOMIC EVALUATION**

**JAMES S. RYU**

**OVERVIEW**

Mr. Ryu was referred for a vocational and economic evaluation by his attorney, Steve Harvey. I interviewed Mr. Ryu on July 21, 2021 in order to complete this evaluation. We discussed the medical, educational, work background and wage information.

**RECORDS REVIEWED**

Numerous reports were reviewed in the preparation of this report. Many of these records add detail to the understanding of the complete situation. These documents include but are not limited to the following:

amended complaint, counterclaims and cross-claim 9/26/16

- Mr. Ryu's
    - Resume
    - Salary Information
    - Management Challenges (Accomplishments)—March 2021
- NMB Salary--2021
- stock option allocation-- July 2021
- BankAsiana
    - Merger Proxy
    - Stock Options Considerations BankAsiana
    - Outstanding Options 2/16/05
    - Payroll Increases 2010 & 2013, Bonuses 2012
    - California Center Bank Employee Information 11/00 & February 05
- US District Court New Jersey Report and Recommendation

Mr. Ryu's Wage History with Source:

| ***Year*** | ***Amount*** | ***Source*** | ***Year*** | ***Amount*** | ***Source*** |
|---|---|---|---|---|---|
| 2020 | $ 1,459 | Wages | 2017 | $ - | Wages |
| | $ 28,147 | Other Income | | | |
| | $ 41,187 | Unemploymewnt | 2016 | $ - | Wages |
| TOTAL | $ 70,793 | | | $ 20,000 | Other Income |
| | | | | | |
| 2019 | $ 1,440 | Wages | | | |
| | $ 32,363 | Other Income | 2015 | $ - | Wages |
| TOTAL | $ 33,803 | | | | |
| | | | 2014 | $ - | Wages |
| 2018 | $ - | Wages | | $ 9,360 | Unemployment |
| | $ 5,000 | | | | |
| TOTAL | $ 5,000 | | 2013 | $ 362,410 | Wages |
| | | | 2012 | $160,000 | Wages |

The 2012 wage will be used for the calculations The 2013 wages of $362,410 includes significant funds received from a bank merger.

## MEDICAL HISTORY

Mr. Ryu had no significant medical problems prior to this series of events.

He has a lot of stress where he developed a heart problem. This is controlled with medication.

Mr. Ryu had significant psychological difficulty when he lost his job and future. Psychological toll has been significant due to the financial and vocational problems. He has had to borrow money from family members as well as liquidate his 401(k) to meet his daily obligations.

Also, at the time when he would expect his career to make sure and reach the boardroom level, he was abruptly fired. He had no significant income or employment from 2014 to 2021. He is grateful for returning to work in April 2021 but his wages are approximately $40,000 a year lower than they were in 2013.

## AGE CATEGORIES

Mr. Ryu was born on February 18, 1965 making him 56 years old. He was 48 years old in 2013.

This places him in the age category of a person of advanced age. He was a younger individual when this problem occurred.

20 CFR 416.963 **Your age as a vocational factor**

*(a)* (a) *General.* "Age" means your chronological age. When we decide whether you are disabled under §416.920(g)(1), we will consider your chronological age in combination with your residual functional capacity, education, and work experience. We will not consider your ability to adjust to other work on the basis of your age alone. In determining the extent to which age affects a person's ability to adjust to other work, we consider advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment, as we explain in paragraphs (c) through (e) of this section. If you are unemployed but you still have the ability to adjust to other work, we will find that you are not disabled. In paragraphs (b) through (e) of this section and in appendix 2 of subpart P of part 404 of this chapter, we explain in more detail how we consider your age as a vocational factor.

(b) *How we apply the age categories.* When we make a finding about your ability to do other work under §416.920(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

(c) *Younger person.* If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2 of subpart P of part 404 of this chapter.

(d) *Person closely approaching advanced age.* If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

(e) *Person of advanced age.* We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older). See §416.968(d)(4).

## EDUCATION & CITIZENSHIP

Mr. Ryu presently has legal immigrant status (Green Card). He is a South Korea citizen.

Mr. Ryu is a 1987 graduate University of California Santa Cruz with a Bachelors of Arts Degree in Economics.

He earned a Master's Degree in Banking at the Pacific Coast Banking School with the University of Washington in Seattle in 2004.

This places him in the category of high school education and above.

**20 CFR 416.964 Your education as a vocational factor**

(a) *General. Education* is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.

(b) *How we evaluate your education.* The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term *education* also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:

(4) *High school education and above.* High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

(5) *Inability to communicate in English.* Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

## TRANSPORTATION

Mr. Ryu has a driver's license and vehicle.

## VOCATIONAL HISTORY

**20 CFR404.1565 Your work experience as a vocational factor**
a) *General. Work experience* means skills and abilities you have acquired through work you have done which show the type of work you may be expected to do. Work you have already been able to do shows the kind of work that you may be expected to do. We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15-year guide is intended to insure that remote work experience is not currently applied. If you have no work experience or worked only "off-and-on" or for brief periods of time during the 15-year period, we generally consider that these do not apply. If you have acquired skills through your past work, we consider you to have these work skills unless you cannot use them in other skilled or semi-skilled work that you can now do. If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled. However, even if you have no work experience, we may consider that you are able to do unskilled work because it requires little or no judgment and can be learned in a short period of time.

Mr. Ryu worked his way up to the chief operating officer of the bank. His goal was to become the chief executive officer. These are highly skilled sedentary positions.

---

## VOCATIONAL/REHABILITATION DISCUSSION/ACCESS TO THE LABOR MARKET

Mr. Ryu was 48 years old when this event occurred and is now 56 years old. During that time, he earned low wages and rely on loans and gifts from his family members as well as use

his 401(k). He was expecting to continue to climb the hierarchy of the bank and reasonably expect to be the chief executive officer. None of these events occurred. In addition, his reputation was significantly damaged to the point where no banking institution would be willing to take a chance on him.

Even if there was no damage to his reputation, he would not be eligible for these types of positions due to his age with the combination of the years he has been out of work. There are many younger candidates without a significant period of unemployment would be considered before Mr. Ryu.

His vocational alternatives are significantly less than they were prior to these allegations. He has lost the credibility that is required as the chief spokesman of any institution. Even if all of the allegations are proven and published as being false, he still has to deal with the issue of his age and significant period of unemployment. Being able to overcome all of these problems is unreasonable.

## VOCATIONAL ANALYSIS/EARNING CAPACITY

Classification of Past and Potential Work/PLACEABILITY

The past work is reviewed in the following chart both as it is performed and how it is performed in the general economy. The growth statistics (number of people working in that occupation in that region and the expected growth), number employed and wages are from the Occupational Employment and Wage Survey for New York/Jersey City/Newark Metropolitan area. The growth is through 2026 and the wages and the number of people employed in that field are the latest available which are for May 2020.

The charts below identify the job title and other factors. The growth statistics is how much growth is expected for this particular position through 2026. The number of people employed and the salary are also for the region. These statistics are cited to indicate whether these are reasonable occupations to pursue. Most of these choices are occupations either with large numbers of people employed or significant growth as they give the applicant a reasonable probability of securing the position.

| **Job Title** | **Growth** | **# Employed** | **Salary** |
|---|---|---|---|
| Past Work | | | |
| Mr. Ryu Past Earnings | | | $160,000 |
| Mr. Ryu's present earnings | | | $120,000 |

Vocational Options

Reviewing all of the above information and the particular information associated with Mr. Ryu, numerous alternative positions can be identified in the general labor market. These options are as follows:

| **Job Title** | **Growth** | **# Employed** | **Salary** |
|---|---|---|---|

| | | | |
|---|---|---|---|
| President Financial Institution | 5.0% | 5,340 | $260,390 |
| Financial Managers | 11.3% | 56,680 | $214,670 |

## ECONOMIC ANALYSIS/LABOR FORCE PARTICIPATION

**Statistical Life Expectancy**
Life expectancy can be evaluated according to sex and age. Mr. Ryu is classified as a 56 year old male According to the National Vital Statistics United States Life Tables 2020, he has a statistical life expectancy of an additional 26.6 years.

Life expectancy would be to the age of 82.6 years.

**Statistical Worklife Expectancy**
Worklife expectancy is the number of years that a worker will remain active in the workplace, i.e. either working or seeking work. This may be spread out over a number of years and accounts for periods of unemployment, illness, family needs and other times when a worker may be out of the workforce. The worklife expectancy considers the age and education and working status. (All people have a worklife expectancy, even if they are not working.)

The Bureau of Labor Statistics classifies Mr. Ryu as a 56 -year-old man with 15 or more years of education.

Mr. Ryu has a worklife expectancy of 10.0 years

It is also reasonable to extend the worklife to the age of 70 due to the lack of retirement income. At the age of 70, a person receives 120% of their maximum Social Security Retirement benefit. This would extend the worklife to 14 years.

The two calculations of worklife expectancy are reasonable as there is no mandatory retirement age and labor force participation for the older workers is increasing. Recent information from the Bureau of Labor Statistics publication (Labor Force Projections to 2018: Older Workers Staying More Active) confirms this trend.

Additional reports supporting the longer worklife have been completed by research from the Congressional Research Service, Center for Retirement Research, and the Journal of Forensic Economics relative to labor force participation and retirement trends (i.e. "Trends in Social Security Claiming").

*Past Economic Loss*

The past wage loss is from 2015 (he had significant wages in 2014 which is after his abrupt firing in 2013) to the present time. The actual wages earned for 2013 have been modified to get a clear understanding of Mr. Ryu's actual wage growth. The wages will be increased by 3% for all calculations. The actually earned figures from 2014 to 2021 are based on the information from Mr. Ryu's United States tax returns.

The loss for this period of time is

| PAST LOSS | | | | | | |
|---|---|---|---|---|---|---|
| **PERIOD** | | ***WOULD HAVE EARNED*** | | ***ACTUALLY EARNED*** | | ***LOSS*** |
| from | to | | | | | |
| 1/1/2012 | 12/31/2012 | $ 160,000 | 100% | $ 160,000 | 100% | $ - |
| 1/1/2013 | 12/31/2013 | $ 164,800 | 100% | $ 164,800 | 100% | $ - |
| 1/1/2014 | 12/31/2014 | $ 169,744 | 100% | $ 9,360 | | $ 152,852 |
| 1/1/2015 | 12/31/2015 | $ 174,836 | 100% | | | $ 162,023 |
| 1/1/2016 | 12/31/2016 | $ 180,081 | 100% | $ 20,000 | | $ 171,745 |
| 1/1/2017 | 12/31/2017 | $ 185,484 | 100% | $ - | | $ 182,049 |
| 1/1/2018 | 12/31/2018 | $ 191,048 | 100% | $ 5,000 | | $ 192,972 |
| 1/1/2019 | 12/31/2019 | $ 196,780 | 100% | $ 33,803 | | $ 204,550 |
| 1/1/2020 | 12/31/2020 | $ 202,683 | 100% | $ 70,793 | | $ 216,823 |
| 1/1/2021 | 12/31/2021 | $ 208,764 | 100% | $ 120,000 | 39% | $ 139,833 |
| | | | | | ***total past losses*** | **$ 1,422,848** |

According to New Jersey law, this must be reduced for income taxes. Combining new Jersey and federal taxes, a 25% rate appears reasonable. This reduces the amount to $1,067,136

*Future Economic Loss*

The wage loss for the regular worklife of 10 years and to the age of 70 (14 years) is

| FUTURE WAGE LOSSES<br>Able to Return to Work, Worklife to the Age of 70 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| YEARS | *WOULD HAVE EARNED* | *GROWTH RATE* | *INSTEAD WILL EARN* | *GROWTH RATE* | PRE-TAX LOSS | TAX RATE | AFTER TAX LOSS | DISCOUNT RATE | PRESENT VALUE | *CUM. TOTAL* |
| 1.0 | $ 215,027 | 3.0% | $ 123,600 | 3.0% | $ 91,427 | 25.0% | $ 68,570.3 | 0.9771 | $ 67,002 | $ 67,002 |
| 2.0 | $ 221,478 | 3.0% | $ 127,308 | 3.0% | $ 94,170 | 25.0% | $ 70,627.4 | 0.9511 | $ 67,172 | $ 134,174 |
| 3.0 | $ 228,122 | 3.0% | $ 131,127 | 3.0% | $ 96,995 | 25.0% | $ 72,746.2 | 0.9248 | $ 67,276 | $ 201,450 |
| 4.0 | $ 234,966 | 3.0% | $ 135,061 | 3.0% | $ 99,905 | 25.0% | $ 74,928.6 | 0.8987 | $ 67,341 | $ 268,791 |
| 5.0 | $ 242,015 | 3.0% | $ 139,113 | 3.0% | $ 102,902 | 25.0% | $ 77,176.4 | 0.8723 | $ 67,321 | $ 336,113 |
| 6.0 | $ 249,275 | 3.0% | $ 143,286 | 3.0% | $ 105,989 | 25.0% | $ 79,491.7 | 0.8471 | $ 67,334 | $ 403,447 |
| 7.0 | $ 256,753 | 3.0% | $ 147,585 | 3.0% | $ 109,169 | 25.0% | $ 81,876.5 | 0.8220 | $ 67,301 | $ 470,748 |
| 8.0 | $ 264,456 | 3.0% | $ 152,012 | 3.0% | $ 112,444 | 25.0% | $ 84,332.8 | 0.7983 | $ 67,319 | $ 538,067 |
| 9.0 | $ 272,390 | 3.0% | $ 156,573 | 3.0% | $ 115,817 | 25.0% | $ 86,862.7 | 0.7750 | $ 67,314 | $ 605,382 |
| ***10.0*** | ***$ 280,561*** | ***3.0%*** | ***$ 161,270*** | ***3.0%*** | ***$ 119,291*** | ***25.0%*** | ***$ 89,468.6*** | ***0.7521*** | ***$ 67,288*** | ***$ 672,670*** |
| 11.0 | $ 288,978 | 3.0% | $ 166,108 | 3.0% | $ 122,870 | 25.0% | $ 92,152.7 | 0.7305 | $ 67,317 | $ 739,987 |
| 12.0 | $ 297,648 | 3.0% | $ 171,091 | 3.0% | $ 126,556 | 25.0% | $ 94,917.3 | 0.7094 | $ 67,338 | $ 807,325 |
| 13.0 | $ 306,577 | 3.0% | $ 176,224 | 3.0% | $ 130,353 | 25.0% | $ 97,764.8 | 0.6889 | $ 67,351 | $ 874,676 |
| 14.0 | $ 315,774 | 3.0% | $ 181,511 | 3.0% | $ 134,264 | 25.0% | $ 100,697.7 | 0.6689 | $ 67,356 | $ 942,032 |

## ECONOMIC LOSS SUMMARY

| | Worklife Expectancy | Age 70 |
|---|---|---|
| Past Wage Loss | $1,067,136 | $1,067,136 |
| Future Wage Loss | $672,670 | $942,032 |
| Benefit Loss | None | None |
| **Total** | **$1,739,806** | **$2,009,272** |

## CONCLUSIONS

Mr. Ryu was wrongfully accused of financial crimes resulting in his loss of employment and career and financial opportunity. He was out of work from 2014 to 2021 when he returned to the banking industry and a reduced capacity he had before these events occurred. He has lost wages and benefits during this period of time plus the opportunity to advance his career. Due to a combination of these events, the lack of employment during these years and his age, these opportunities cannot be recovered.

There is also a significant loss of stock options and bonuses that cannot be determined with any degree of professional probability.

Mr. Ryu has sustained a minimum of economic damages between $1,739,806 and $2,009,272.

Should further information become available, I would be glad to consider this information in a supplemental report.

All opinions offered are within a reasonable degree of professional probability.

Respectfully Submitted,

Gary A. Young, M.Ed., CRC, CDMS, CCM, ABVE/D
Certified Earnings Analyst Certified Forensic Rehabilitation Counselor

Katherine A. Young, M. Ed., CRC, CESP

# REFERENCES

Dunn, Patrick & Cain, Hal (2002) Comparisons of Pre-Injury Characteristics of Injured Workers Across Levels of Post-Injury Occupational Congruence: Potential Applications for Transferable Skills Analysis. *The Journal of Forensic Vocational Analysis, 4*(1), 13-19.

Weed, Roger O. PhD., LPC, CLC P, CRC, 2004 An Overview of the RAPEL methodology for Life Care Planner's in Tort Cases, Journal of life care planning, volume 3 number two (67-84)B

https://www.kff.org/health-costs/report/2019-employer-health-benefits-survey/ The Henry J. Kaiser Foundation, 2019 Employer Health Benefits Survey

https://www.ssa.gov/oact/TR/TRassum.html

Stephenson, Stanley P., PhD, Macpherson, David A.., PhD, (2018), Determining Economic Damages *James Publishing*

Tamorah Hunt, Joyce Pickersgill and Herbert Rutemiller, 2001 Recent Trends in Median Years to Retirement and Worklife Expectancy for the Civilian U.S. Population (Prepared Using 1998/99 BLS Labor Force Participation Rates), Journal of Forensic Economics Sep 2001, Vol. 14, No. 3 (Fall 2001) pp. 203-227

Rutledge, Christopher and Webb, Anthony. Will the Average Retirement Age Continue to Increase? WP#2015-16, Center for Retirement Research at Boston College

John L. Holland (1997) Making Vocational Choices., *Psychological Assessment Resources*

Williams, John; Dunn, Patrick; Bast, Steve; Giesen, Judy (2006) Factors Considered by Vocational Rehabilitation Professionals in Employability and Earning Capacity Assessment. *Rehabilitation Counseling Bulletin*, 50:1 24-34

United States Department of Labor (1991a) *Dictionary of Occupational Titles, Revised* (4th ed.), Washington DC

United States Department of Labor (1991a) *Selected Characteristics of Occupations* Washington DC

2018 United States Life Tables, National Center for Health Statistics Vital Statistics Report for the Centers for Disease Control and Prevention, US Department of Health and Human Services (November 10, 2004)

John McNeil, Census Brief of 1997 Current Population Survey, The United States Department of Commerce, Bureau of the Census

2005 Employer Cost for Employee Compensation, The United States Department of Labor Bureau of Labor Statistics.

2020 Occupational Employment and Wage Survey (OEWS) All Industry Wage Rate Estimate, Source- Bureau of Labor Statistics (BLS) Employment and Training Administration (ETA), State Employment Security Agency (SESA)

## EXERTIONAL CATEGORIES

Exertional categories are divided into sedentary, light, medium, heavy and very heavy. (The following information is from the ***Dictionary of Occupational Titles*** page 1013).

S-Sedentary Work—Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

L-Light Work—Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constantly pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

M-Medium Work—Exerting 20 to 50 pounds of force occasionally and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical
Demands requirements are in excess of those for Light Work.

H-Heavy Work—Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Medium Work.

V-Very Heavy Work—Exerting in excess of 100 pounds of force occasionally, and/or 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Heavy Work.

**Gary A. Young, M.Ed., CRC, CDMS, CCM, NCC, ABVE/D, FVE, CLCP**
**4 Trenton Avenue**
**West Trenton, NJ 08628**
**Phone/Fax 609-883-9033**
e-mail GYoungCRC@gmail.com
www.garyyoungvocationalexpert.com

**Experience**

**1994—Present**

**VOCATIONAL EXPERT** ***Rehabilitation Consultant***

Evaluate vocational and economic loss projections in cases focusing on employment related matters evaluating residual productive skills and value. Determine future vocational options and economic loss projections.

Provide vocational expert and economic loss testimony. Have been accepted as an expert in 8 states for workers compensation and litigation matters for vocational-economics and Life Care Planning.

Provide rehabilitation case management services, placement services, vocational evaluation and placement. Specialize in catastrophic case management.

Consultant on Americans with Disabilities Act issues providing sensitivity training, compliance issues, job analysis and employee training sessions.

**September 1982 To Present**

***Vocational Expert, Social Security Administration***

Participated in training programs for Administrative Law Judges and representative bar association and National Representative organizations.

**June 1982 To October 1994**

***Senior Rehabilitation Consultant, Regional Technical Advisor***

Continental Rehabilitation Resources

Provide rehabilitation services to the insurance industry including catastrophic injury management, medical case management, vocational evaluation and placement. Performed these services from Maine through Virginia.

Developed life care plans and economic projections in these cases. Responsible for $100,000,000 in reserves.

Speaker at over 50 seminars on legal, medical and insurance related issues. Topics include Americans with Disabilities Act, Reflex Sympathetic Dystrophy, Severe Orthopedic Injuries, Vocational Evaluations, etc.

Supervised catastrophic injuries and rehabilitation professionals in 13 states. Negotiated fees, reporting requirements, resolved disputes with families, physicians, attorneys, hospitals, etc. Supervised training of rehabilitation nurses and counselors. Wrote training manual. Developed reporting protocol for claims professionals.

Developed, instituted and supervised rehabilitation program for Continental Reinsurance, a multi-national reinsurance company.

**June 1977 To June 1982**

***Vocational Rehabilitation Specialist***

**General Rehabilitation Services**
**International Rehabilitation Associates**

Provided vocational counseling and testing and placement to disabled workers. Developed and implemented a company wide bonus program.

Wrote grants for sheltered workshop funding.

**Education**

M.Ed., Temple University, *Counseling Psychology,* 1984
BA, Eastern College*, English Writing, English Literature, Sociology,* 1975
Minnesota State University, Forensic Vocational Rehabilitation Certificate Program 2011
Capital Law School Certified Life Care Planner 2012

Professional Memberships and Certifications

Certified Life Care Planner (2012)
American Rehabilitation Economics Association (2007)
Forensic Vocational Expert
Certified Earnings Analyst
Diplomate American Board of Vocational Experts (2001)
Certified Rehabilitation Counselor (1981, cert. # 14180)
Certified Disability Management Specialist (1984 cert. # 00033)
Certified Case Manager (1993 cert. # 1703)
National Certified Counselor (1995 cert. # 41529)
National Association of Forensic Economists
Board of Directors, *Reflex Sympathetic Dystrophy Syndrome Association* 1990—1999
New Jersey Licensed Counselor (2000 License #: PC 0318)
Pennsylvania Licensed Counselor (2002 License #PC000422)
National Association of Rehabilitation Professionals in the Private Sector Charter Member
Who's Who in Health
Certified Vocational Expert Pennsylvania Department of Labor Workers' Compensation Department for Act 57 Evaluations

**Selected Speaking Topics**

Legal Issues in Report Writing
Review of Workers' Compensation Laws
Social Security Practices and Regulations
Hand Injuries and Rehabilitation Practices
Vocational Evaluation and Testimony in Social Security Disability Setting including mock hearing for National Organization of Social Security Representatives.
Funded Employment Seminar for Delaware County Bar Association
Dickinson Law School Seminar on Social Security Issues Lecturer and Author
Funded Employment in Pennsylvania Workers Compensation

# Katherine A. Young

Phone: 215.850.8637 Email: KatherineYoungCRC@gmail.com

## Professional Experience

Vocational Expert, Social Security Administration — July 2018-Present
Provide Vocational Expert testimony during Social Security Disability Hearings

Vocational Counselor, Young Vocational Analytics — October 2011 – Present
Vocational Interviews, Vocational Analysis
Administered Vocational Testing, Devised Rehabilitation Plans

Employment Specialist, Goodwill Keystone Area — September 2016 – June 2018
Develop resumes/cover letters,
Job Search, Interview Skills, Job Coaching
Individualized Employment Plans, Fading Plans
Labor Market Surveys, Job Development

Teacher, School District of Philadelphia, PA — September 2005 – June 2016
K-8 General Music Teacher, Choir Director
Student mentor for 16 students: conflict resolution and academic advisement
IEP consultations and implementation of Educational/Rehabilitation Programs
Administration and scoring of reading and math level assessments

Presenter, Bloomsburg University of Pennsylvania, PA — March 2016
Breaking Ground: Building Career Through the Arts
Symposium panelist regarding how skills from the arts are utilized in the work place

## Education

The George Washington University, Washington D.C. — December 2017
Masters of Rehabilitation Counseling Degree, Current GPA: 3.98
Counseling studies with Dr. Robert Froehlich and Dr. Scott Beveridge

Westminster Choir College of Rider University, Princeton, NJ — December 2008
Masters of Music Education Degree, GPA: 3.652
Education studies with Dr. Patrick Schmidt and Dr. Frank Abrahams
O Passo studies with Lucas Ciavatta, Rio de Janeiro, Brazil

Bloomsburg University, Bloomsburg, PA — May 2005
Bachelor of Arts Degree in Music Education and in Applied Music, GPA: 3.5
Voice & Vocal/Choral studies with Dr. Alan Baker

**Trainings/Certifications**

| | |
|---|---|
| Certified Employment Support Professional | 04/2018 |
| Social Security Benefits Counseling Training | 12/2017 |
| Certified Rehabilitation Counselor Certification | 10/2017 |
| Griffin and Hammis Discovery and Customized Employment Training | 04/2017 |
| Montgomery County Mental Health Adult Crisis Training | 05/2017 |
| Wellness Recovery Action Plan (WRAP) Training | 05/2017 |
| Intro to Adult Mental Health Training | 11/2016 |
| Creative Job Development Training | 10/2016 |

**Professional Memberships**

National Rehabilitation Association
    Pennsylvania Chapter, Board Member, 2018-Current
International Association of Rehabilitation Professionals
National Association of Multicultural Rehabilitation Concerns
National Association of Service Providers in Private Rehabilitation
Rehabilitation Counselors and Educators Association
Vocational Evaluation and Work Adjustment Association